(June 1, 1894.)

## BANNOCK COUNTY v. BUNTING.

[37 Pac. 277.]

SECTION 3602 OF THE REVISED STATUTES CONSTRUED—ISSUING OF BONDS. BY COUNTIES.—Counties may issue bonds to take up both warrant and bonded indebtedness under section 3602 of the Revised Statutes of Idaho, when authorized so to do by a vote of two-thirds of the electors of the county voting at an election to be held for that purpose.

PREREQUISITE FOR A BOND ISSUE—MUST BE SUBMITTED TO VOTE OF PEOPLE.—The submission of the question to a vote of the people of the county is an indispensable prerequisite to the incurring of any indebtedness or liability for any purpose, exceeding in that year the income and revenue provided for it for such year, except for the ordinary and necessary expenses of the county.

WARRANT FOR $4,000 WAS IN EXCESS OF REVENUE FOR THE YEAR—WAS NOT AN ORDINARY AND NECESSARY EXPENSE—WAS IN VIOLATION OF CONSTITUTION.—A warrant issued for purchase of courthouse site at an expense of $4,000 incurred an indebtedness above the revenue of the current year, was not an ordinary and necessary expense, and was issued in violation of the constitutional provision, section 3, article 8.

(Syllabus by the court.)

APPEAL from District Court, Bannock County.

George M. Parsons, Attorney General, S. C. Winters, and Richard Z. Johnson, for Appellant.

This is an action to determine the authority of the board of commissioners of one of the counties of the state to fund its indebtedness under chapter 6 of title 13 of the Civil Code as amended by the act of the state legislature approved March 13, 1891, entitled, "An act to amend section 3602 of chapter 6 of title 13 of the Revised Statutes, relating to the refunding of the bonded indebtedness of counties." Section 15 of article 7 of the constitution requires that the counties shall be put on a cash basis and provides a method of paying the floating indebtedness of a county by taxation, which is exclusive and precludes the issuing of funding bonds to pay such indebtedness. The section is addressed to the legislative branch of the govern-

ment. "The legislature shall provide by law." "It shall provide," are its terms. There are no negative words in the section and it is not self-executing. It is addressed to the legislature, and is inoperative until carried into effect by the necessary legislation. Such constitutional provisions, addressed to the legislature for its action, and having no negative words or prohibitions, are not in fact of force until carried into effect by the necessary legislation. (*Williams v. Mayor of Detroit*, 2 Mich. 560-565; *Brown v. Seay*, 86 Ala. 122, 5 South. 216.) "They do not displace the law previously in force, though the purpose may be manifest to do away with it by the legislation required." (Cooley's Constitutional Limitations, 6th ed., 98-100; Cooley on Taxation, 326, 327; *Holzhauer v. Newport*, 94 Ky. 396, 22 S. W. 752; *Hills v. Chicago*, 60 Ill. 91; *Morley v. Thayer*, 3 Fed. 740; *County of Erie v. City of Erie*, 113 Pa. St. 360, 6 Atl. 137; *French v. Teschemaker*, 24 Cal. 518, 541, 542; *Ex parte Wall*, 48 Cal. 318, 319; *Ewing v. Orville Min. Co.*, 56 Cal. 652-655.) "The prohibition of section 18 of article 11 of the constitution prohibiting any county, city, township, etc., from incurring any indebtedness or liability in any manner or for any purpose, exceeding in any year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified voters refers only to the indebtedness or liability incurred by the act or conduct of the municipal body." (*Lewis v. Widber*, 99 Cal. 412, 33 Pac. 1128; *Coslim v. Durm*, 58 Cal. 581; *Welch v. Strother*, 74 Cal. 413, 16 Pac. 22.) "The issue of bonds to redeem outstanding bonds or warrants is not the incurring of an indebtedness, within the limitation of the constitution, and need not therefore be submitted to the electors." (*Hotchkiss v. Marion*, 12 Mont. 218, 29 Pac. 821, 823; *Blanton v. Board of Commrs.*, 101 N. C. 535, 8 S. E. 162; *Poughkeepsie v. Quintard*, 136 N. Y. 275, 32 N. E. 765; *Barnum v. Supervisors*, 137 N. Y. 179, 33 N. E. 162; *Barnard v. Knox County*, 37 Fed. 564, 565.) "The erection of courthouses, jails and bridges is amongst the ordinary political or administrative duties of all counties." (*Claiborne Co. v. Brooks*, 111 U. S. 406, 4 Sup. Ct. Rep. 489.)

Stewart & Dietrich, for Respondent.

The indebtedness intended to be funded by the bonds in question was all evidenced by county warrants. The funding law does not contemplate warrant indebtedness. The original chapter (Civ. Code, tit. 13, c. 6) providing for the redemption of county indebtedness, does not, upon its face, bear any distinction of warrant and bonded indebtedness. But it is significant that two weeks after the legislature gave us this chapter, the same legislature finds it necessary to make provision for warrant indebtedness and enacts section 1415. The two acts were passed by the same legislature, are *in pari materia* and must be construed together. Section 1415 must be read as a part of chapter 6. (Sutherland on Statutory Construction, sec. 288; *Harrison v. State*, 22 Md. 468, 85 Am. Dec. 658.) It is a common principle of statutory construction that general and ambiguous terms of an act are limited and explained by its title. (Sutherland on Statutory Construction, secs. 210, 211; Endlich on Interpretation of Statutes, sec. 58.) The amendment repeals the section amended. (Const., art. 3, sec. 18; *Billings v. Harvey*, 6 Cal. 381.) The provision required by the constitution for their payment not having been made, the bonds in question are invalid. (*City of Terrell v. Dessaint*, 71 Tex. 770, 9 S. W. 593; *Citizens' Bank v. City of Terrell*, 78 Tex. 450, 14 S. W. 1003; *Bolton v. City of San Antonio* (Tex.), 21 S. W. 593; *Quaker City Nat. Bank v. Nolan County*, 59 Fed. 668.) The board of commissioners at their regular meeting in April of each year is to make an estimate of the probable expenses of the year and make a levy just sufficient therefor. (Rev. Stats., sec. 1411.) If the estimate prove to be too high and there is surplus revenue, it is set apart for the payment of back warrants; and if too low, the surplus warrants shall be paid out of special fund. This is the constitutional scheme. Nothing can be plainer than the intention that the revenues of each year constitute a fund for the payment of the expenses of that year, and to that effect are the authorities. (*Gas Co. v. Brickwedel*, 62 Cal. 642; *Shaw v. Statler*, 74 Cal. 258, 15 Pac. 833; *Schwartz v. Wilson*, 75 Cal. 502, 17 Pac. 449; *Lewis v. Widber*, 99 Cal. 412, 33 Pac. 1128.) A warrant drawn thereon is an assignment of so much thereof. An order on the treasury—a warrant—is not an indebtedness when there is money to pay

it, or suitable provision has been made.   (*Sackett v. New Albany*, 88 Ind. 473, 45 Am. Rep. 472.)   By "indebtedness" in this connection, we mean an agreement of some kind by the city to pay money when no suitable provision has been made for the prompt discharge of the obligation imposed by the agreement.   To the same effect are the following cases: *Corpus Christi v. Woessner*, 58 Tex. 462; *City of Terrell v. Dessaint*, 71 Tex. 770, 9 S. W. 594; *Dively v. City of Cedar Falls*, 27 Iowa, 232; Dillon on Municipal Corporations, sec. 135.

Per CURIAM.—Plaintiff is an organized county in the state of Idaho.   Defendant is a banking company, organized and incorporated under the laws of the territory of Utah, doing business at the town of Blackfoot, in the said state of Idaho. The county commissioners of Bannock county, for the purpose of funding the indebtedness of said county, determined to issue, and did issue, bonds of said county to the amount of $120,000, bearing date January 1, 1894.   A copy of one of said bonds, all being of the same tenor and date, is as follows, to wit: "No. 1. $500.00.   United States of America.   State of Idaho, County of Bannock.   Gold Funding Bond.   Know all men by these presents, that the county of Bannock, in the state of Idaho, acknowledges itself to owe, and for value received hereby promises to pay, C. Bunting & Co., or bearer, on the first day of January, A. D. 1904, the sum of $500, with interest thereon at the rate of seven per cent per annum, payable semi-annually, on the first day of January and July, as provided by law, and on the presentation and surrender of the annexed coupons as they severally become due.   Both principal and interest are payable in gold coin of the United States of America, of the present standard of weight and fineness, at the office of the county treasurer of said county, in the town of Pocatello, Idaho, or at the Chase National Bank, New York City, state of New York, at the option of the holder hereof.   This bond is one of a series of two hundred and sixty-four bonds of like tenor and date, numbered from 1 to 264, aggregating the sum of $120,000, issued for the purpose of funding the principal and interest of certain valid outstanding indebtedness of said county legally contracted subsequent to July 30, 1886, in pursuance of and in conformity with the provisions of an act of the

legislative assembly of the territory of Idaho, entitled 'An act to amend title 13 of the Revised Statutes by adding thereto chapter 6, concerning the redemption of county indebtedness,' approved January 25, 1887, as amended by the act of the legislature of the said state of Idaho approved March 13, 1891. It is hereby certified that all acts and things required to be done precedent to the issue of this bond have been done and performed as by law required; and that all· of the said indebtedness so funded was contracted within the legal limitations· and restrictions thereon, and only for the ordinary and necessary expenses authorized by the general laws of the said state; and also that the said ·bonds are issued in strict compliance with and in conformity to the laws and constitution of the said state of Idaho, and, for the payment hereof, the full faith, credit, and resources of said county are hereby irrevocably pledged. In witness whereof. the board of county commissioners of said Bannock county has caused this bond to be signed by its chairman, and attested by its clerk, under the corporate seal of the said board, and to be countersigned by the treasurer of said county, and the coupons hereto attached to be signed by the said treasurer, this first day of January, A. D. 1894. John S. Baker, Chairman. Attest: O. J. Bell, Clerk. [Seal] Countersigned by J. W. Keeney, County Treasurer." A notice of the intention to issue and negotiate said bonds was published in the "Pocatello Tribune," a newspaper printed and published in said Bannock county. In response to said notice, the respondent, C. Bunting & Co., made and filed with the clerk of the board of county commissioners the following proposal to purchase said bonds:

"Pocatello, Idaho, November 24, '93.

"To the Honorable Board of County Commissioners, Bannock County, Idaho.

"Gentlemen: For the $120,000, Bannock county, Idaho, funding bonds, advertised for sale to-day, a copy of which notice we inclose herewith, we will pay you par and accrued interest for the entire issue, on the following terms, to wit: Said $120,000 bonds to be dated December 1, 1893, or January 1, 1894, and to be issued in denominations of $500 each, principal and in-

terest to be made payable in gold coin of the United States of America, of the present standard of weight and fineness, and to bear interest at the rate of seven per cent per annum; said interest to be paid semi-annually on the first day of January and the first day of July in each year, and both principal and interest to be made payable at the office of the county treasurer of the county of Bannock, or at Chase National Bank in the city of New York, state of New York,. at the option of the holder of the bonds; said bonds to be subject to our approval as to validity and legality.    We herewith inclose our certified check on the First National Bank of Pocatello for $5,000, to meet the requirement of your notice.

"Respectfully,

"C. BUNTING & CO."

On the twenty-fourth day of November, 1893, the above bid was accepted by the commissioners, who thereupon ordered that the bonds be executed, sold and delivered to the defendant. Said bonds were so engraved and executed and tendered and offered to the said defendant and a demand made for the payment therefor.    Defendant refused to accept said bonds, and refused to pay the stipulated price therefor, or any part thereof.    The plaintiff brings this suit to compel specific performance.

The defendant contends: 1. "The board of county commissioners were and are without jurisdiction to issue such bonds." —and quotes section 15, article 7, of the constitution in support thereof.    This section provides that the legislature shall provide by law such a system of county finance as shall cause the business of the several counties to be conducted upon a cash basis.    The framers of the constitution must of course have taken into consideration the condition of the several counties of the state financially at the time the constitutional convention was in session. Many of said counties were largely indebted both in bonds and outstanding warrants.    One of the methods clearly authorized by this section of the constitution for bringing the business of the counties to a cash basis was and is by issuing bonds for the purpose of taking up outstanding warrants and refunding bonds.    This will more clearly appear

hereafter in considering other sections of the constitution. This section also recognized another method of bringing the county to a cash basis, which is contained in the latter part of the section, to wit: "It shall also provide that whenever any county shall have any warrants outstanding and unpaid, the county commissioners shall levy a special tax not to exceed ten mills on the dollar, . . . . for the creation of a special fund for the redemption of such warrants." This method might be found entirely adequate, convenient and inexpensive in certain cases where the indebtedness was not so large, but it could be discharged within a comparatively short term of years. There is another method, which, though not mentioned in the constitution, and perhaps for that reason not ordinarily considered by the commissioners, is to rigidly and perseveringly reduce by all proper means the expense of the county below the income. The methods of bonding and levying a special tax were both provided for by law, and therefore both recognized by the constitution, and not therein forbidden, to wit, the former by section 3602, and the latter by section 1415, of the Revised Statutes, although the last-named section is practically useless, by reason of what is presumed to be a mistake in authorizing the levy of from six to fifteen mills on the $100, instead of on the one dollar, of taxable property.

2. The respondent contends that the funding law does not contemplate warrant indebtedness. Section 3602 of the Revised Statutes of Idaho, as amended in the First Session Laws of State (page 200), reads as follows: "The board of county commissioners of any county may issue negotiable coupon bonds of their county for the purpose of paying, redeeming, funding or refunding the principal and interest of any of the following indebtedness of their county, when the same can be done to the profit and benefit of the county: 1. Any indebtedness contracted prior to July 30, 1886; 2. Any indebtedness contracted subsequent to July 30, 1886. And all bonds issued under the provisions of this act must show on their face for which of the foregoing classes of indebtedness they are issued. The board of county commissioners of the county may refund the said indebtedness at a rate of interest not to exceed seven per cent per annum." It is clear from the reading of this sec-

tion that it includes not only bond indebtedness, but warrants also. As there is no restriction in the wording of the statute to bond indebtedness only, the words "any indebtedness" are sufficiently broad to include debts of both kinds. It is true that the title to the act would seem to restrict the issue of bonds to the refunding of the bonded indebtedness of the counties. The title of the act is as follows: "An act to amend section 3602, of chapter 6, of title 13, of the Revised Statutes, relating to the refunding of the bonded indebtedness of counties." But the title of chapter 6 does not refer to the refunding of the bonded indebtedness of counties at all, but is simply "Redemption of County Indebtedness," and the body of section 3602, as it appears in the Revised Statutes, is the same as the amended section, excepting that the words "at a lower rate of interest" are inserted in the original section, and are left out in the amended section.

It is again objected by the respondent that there was and could be no adequate provision by the board of commissioners for paying the interest on the bonds as they became due, and for constituting a sinking fund for their redemption at maturity, as required in section 3, article 8, of the constitution; but we think this requirement of the constitution is sufficiently met by section 3602 of the Revised Statutes, which is as follows: "The board must cause to be levied annually upon all of the taxable property of the county, in addition to other authorized taxes, a sufficient sum to pay the interest on all bonds disposed of in pursuance of the provisions of this chapter, and must at least one year before such bonds become due, and in time to provide the means for their payment, cause to be levied a sufficient additional sum to pay said bonds as they become due."

The next objection of the respondent is as follows: "The board of county commissioners were and are without jurisdiction to issue such bonds, because no question relating to the issue or sale of the bonds was ever submitted to a vote of the electors of the county." The constitution (article 8, section 3) provides that "no county shall incur any indebtedness or liability in any manner or for any purpose exceeding in that year, the income and revenue provided for it for said year without the assent of two-thirds of the qualified electors thereof voting

at an election to be held for that purpose." This provision of the constitution is comprehensive and emphatic. Mr. Justice Gray, in the case of *Doon Tp. v. Cummins,* 142 U. S. 366, 12 Sup. Ct. Rep. 221, in considering a similar provision of the constitution of the state of Iowa, which is as follows: "No county or other political or municipal corporation shall be allowed to become indebted in any manner or for any purpose to an amount in the aggregate exceeding five per centum of the value of the taxable property within such county or corporation," etc.—uses the following language: "The prohibition extending to debts contracted in any manner or for any purpose, it matters not whether they are in every sense new debts, or are debts contracted for the purpose of paying old ones, so long as the aggregate of all debts, old and new, outstanding at one time, and on which the corporation is liable to be sued, exceeds the constitutional limit. The power of the legislature in this respect being restricted and controlled by the constitution, any statute which purports to authorize a municipal corporation to contract debts in any manner or for any purpose whatever in excess of the constitutional limit is to that extent unconstitutional and void." The court goes on to say: "The treasurer is authorized to sell the new bonds, and to apply the proceeds of the sale to the payment of the outstanding ones. It is evident that, if new bonds are issued without a cancellation or surrender of the old ones, the aggregate debt outstanding, and on which the corporation is liable to be sued, is at once and necessarily increased, and if new bonds, equal in amount to the old ones, are so issued at one time, is doubled; and that it will remain at the increased amount until the proceeds of the new bonds are applied to the payment of the old ones, or until some of the obligations are otherwise discharged. It is true that if the proceeds of the sale are used by the municipal officers, as directed by the statute, in paying off the old debt, the aggregate indebtedness will ultimately be reduced to the former limit; but it is none the less true that it has been increased in the interval, and that, unless the officers do their duty, the increase will be permanent. It would be inconsistent alike with the words and with the object of the constitutional provision, framed to protect municipal corporations from being loaded

with debt beyond a certain limit, to make their liability to be charged with debts contracted beyond that limit depend solely upon the discretion or honesty of their officers." The provision of our constitution is, in effect, that no county shall incur any indebtedness or liability, in any manner or for any purpose, exceeding in that year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. This provision of the constitution is positive and unequivocal, and the logic of the court in *Doon Tp. v. Cummins, supra,* is unanswerable. The provision forbids positively the incurring of any indebtedness, in any manner or for any purpose, exceeding in that year the income and revenue provided for it, without the assent of two-thirds of the electors.

The commissioners ordered, issued and advertised for sale, $120,000, in bonds bearing seven per cent interest. There was then in the treasury of said Bannock county, according to the stipulation in the case, the sum of $30,422.55, on the second Monday of January, 1894. No part of the revenue of 1893, amounting to $30,422.55, had been expended in the payment of the county indebtedness. The indebtedness at that time of the said county, outstanding and remaining unpaid, evidenced by warrants, was, as stated by the court, about the sum of $135,000. It is clear that if bonds to the amount of $120,000 were issued and sold, as provided by resolution and order of the board of commissioners, the indebtedness of the county upon the sale of the bonds would be more than doubled, without submitting the question as to the issue of the bonds to a vote of the people of the county, in direct violation of the constitution. It is true the board of commissioners, in their order, recite for what purpose the bonds are to be issued. The order is as follows, to wit: "The board, believing it to be to the best interest and to the profit and benefit of Bannock county that the outstanding indebtedness of said county should be funded by the issue and sale of negotiable coupon bonds of said county, for the purpose of paying, redeeming and funding the principal and interest of all indebtedness of said county contracted subsequent to the thirtieth day of June, 1886, ordered that notice of the intention to issue and negotiate such bonds and to invite bidders there-

for be given, as required by law." The purpose is stated to be to pay, redeem and fund the principal and interest of all indebtedness of said county. Suppose, however, that the commissioners, or their successors in office, when the money came into the treasury, should conclude to use it, or a portion of it, for some other purpose. Of course, the presumption of this court is that the commissioners would scrupulously carry out the apparent intention of the board when the bonds were sold, as expressed in the above order; but the court cannot deal in presumptions in favor of proceedings taken without compliance with the constitution. Again, until the money was actually so applied, the debt would be more than doubled. It is apparent, also, that when the revenue for the year 1893, then in the treasury, amounting to the sum of $30,422.55, is deducted from the whole amount of indebtedness of Bannock county on January 1, 1894, which was $135,000, there would remain as the then indebtedness of Bannock county the sum of $104,577.45, or, in round numbers, $105,000. Bonds being issued and sold to the amount of $120,000 would leave $15,000 of indebtedness, incurred not for the payment of any prior indebtedness whatever, and of which no disposition is made, or proposed to be made, in the order of the board. This amount is over and above the revenues of the county for the fiscal year of 1893, and is also incurred without submitting the matter to a vote of the people of the county, as the constitution requires. The submission of the question to a vote of the people of the county is an indispensable prerequisite to the incurring of any indebtedness or liability, for any purpose, exceeding in that year the income and revenue provided for it for such year; and any indebtedness or liability incurred contrary to this provision is declared by the constitution to be void, unless it be for the payment of the ordinary and necessary expenses, authorized by the general laws of the state. Doubtless, the commissioners might issue bonds to an amount equal to the legal indebtedness of the county at the time of said issue, after deducting the cash on hand; said bonds to be conformable to the constitution and laws now in force, and to be exchanged for county warrants in sums of $500 or $1,000 and upward, if the same can be done to the profit and benefit of the county, and cancel the warrants

as soon as received therefor, as it would seem that this would not increase the indebtedness. The tax levy made in April, 1893, for current expenses, is for the fiscal year ending the second Monday of January, 1894, and the fund arising therefrom should be applied in payment of warrants issued for such expenses according to date of registry.

Respondent further claims that warrants numbered 224 to 413, inclusive, aggregating the sum of $94,929.65, issued to Bingham county in payment of indebtedness inherited from Bingham county, and apportioned under special act creating Bannock county; and warrants issued from Nos. 161 to 172, inclusive, and 452, 453, and 137, in 1894, aggregating $5,599.94, issued to recorder of Bingham county, as provided by said special act, in payment for transcribing records, are issued without authority, and in violation of subdivision 9, section 19, article 3, of the constitution. But the law creating Bannock county is specially authorized by sections 3 and 4, article 18, of the constitution; and, in the creation of such county, the legislature is authorized to make any provision necessary to the complete organization of the county, not specifically prohibited by the constitution, and, in doing so, could provide for the apportionment of the indebtedness then resting upon the whole of Bingham, including that part now called "Bannock," and could also provide for the payment for transcribing the records, as this is one of the necessary expenses to the complete organization of the county.

The item $435.09, warrant No. 58, was issued to pay for a temporary jail. It is the duty of the commissioners to provide a place for the safekeeping of prisoners. A jail cannot ordinarily be hired, as buildings suitable for jail purposes are not erected by private parties. The above amount might very properly be expended, when necessary, for repairing a jail already built; and as it was paid for a temporary jail, and is certainly a small expense for such a purpose, we think it should be held to be an ordinary and necessary expense, and authorized by the constitution.

Objection is also made to warrant No. 138, for $4,000, issued for the purchase of a block of land in the town of Pocatello, as a site for courthouse. This is clearly not among the ordi-

nary and necessary expenses of the county. Section 1762 of the Revised Statutes of Idaho, clearly indicates that the legislature did not consider this an ordinary expense of the county, as this section makes special provision for erecting courthouse, jail and other public buildings, as follows: "When a petition signed by at least one-third of the taxpayers, who are qualified voters of any county, is presented to the board at any regular meeting, asking that a courthouse, jail or other public buildings or improvements be built for the use and benefit of the county, the cost of which will exceed $1,000, . . . . the clerk of the board must give notice," etc.—thus indicating beyond question that the construction of courthouses, jails and other public buildings was an extraordinary expenditure. The ordinary expenses of the county may be and are paid without any such preliminary proceeding, and debts are and may be contracted for the ordinary expenses of the county without complying with this statute, although the constitution enjoins upon the people the necessity of placing the counties upon a cash basis. The constitution has adopted a more stringent provision than the one contained in section 1762, as above set forth. Section 3, article 8 of the constitution requires a two-thirds vote of the people of the county voting at an election to be held for that purpose before such extraordinary indebtedness could be incurred. It is clear that, if the commissioners could incur a debt for a courthouse site at a cost of $4,000 they might purchase one at a cost of $10,000, and proceed to erect a courthouse at a cost of $20,000, all of which would be in direct violation of the constitution. It is, of course, the duty of commissioners to provide a suitable place for holding of the courts and public offices, jails, etc.; but such rooms must be temporarily provided, at as little expense as is consistent with providing suitable quarters, until the question can be submitted to the people. The issue of warrant No. 138, for the purchase of courthouse site, at a cost of $4,000, incurred an indebtedness above the revenues of the current year, and was in violation of the constitutional provision. The indebtedness incurred during the fiscal year 1893 is stated at $39,917.82, and the revenue provided for that year amounts to $30,422.55 only. The question of incurring such indebtedness was not submitted to the people.

A question is suggested by the record in this case which, while it has not been mooted or discussed in the briefs of counsel, we deem of sufficient importance to be considered by the court. The bonds required by the proposal of the defendant, and issued, or proposed to be issued, by the county of Bannock, are denominated a "gold funding bond," and are by their terms made payable, both principal and interest, "in gold coin of the United States of America, of the present standard of weight and fineness, at the office of the county treasurer of said county, in the town of Pocatello, Idaho, or at the Chase National Bank, New York City, state of New York, at the option of the holder hereof." At the second session of the state legislature of Idaho an act was passed by which it was provided "that from and after this act shall take effect, all obligations of debt, judgments or executions stated in terms of dollars and to be paid in money, if not dischargeable in United States legal tender notes, shall be payable in either the standard silver or gold coin authorized by the Congress of the United States, all stipulations in the contract to the contrary notwithstanding." (2d Sess. Laws, Idaho, p. 78.) The bonds under consideration would seem to be in conflict with the provisions of this statute. While it may be urged that this apparent conflict between the conditions of the bond and the provisions of the statute would not impair the validity of the bonds, as an obligation of the county to pay the same in the same manner as provided by the statute, to wit, "in the standard silver or gold coin authorized by the Congress of the United States," it must, we think, be conceded that it would illy comport with the dignity or probity of the state to permit the issuance of evidences of indebtedness which, by their terms, impose obligations not recognized by the laws of the state. The provisions of the federal constitution impose upon the states an inhibition against the making of anything but gold and silver coin a tender in payment of debts. The legitimate and conclusive implication of this provision of the constitution is that the states may make the gold and silver coin of the republic, or such gold and silver coin as is recognized by the republic, a tender in payment of debts. These bonds are not personal contracts or obligations; they are the obligations of municipal corporations, the issuance of which is pro-

vided for by express statutes of the state, enacted for this purpose, and should be issued in conformity with the existing law. The statute referred to was enacted in the interest of the taxpayers and debtors of the state, and it is the province and duty of the courts to see, not only that those interests are protected, but that no deception shall be permitted upon those who become the creditors of the state or of any county. To hold otherwise would, in our view, be not only a violation of express law, but would be compromising both the credit and the probity of the state. The proposition of the defendant requires a condition that cannot be complied with by the county, and an obligation on the part of the county to comply with it could not be enforced, but the bonds, when due, would be payable in either the standard silver or gold coin authorized by the Congress of the United States. The judgment of the court below is affirmed. Costs awarded to the defendant.