137 P.3d 388

CITY OF BOISE, a municipal corporation of the State of Idaho, Petitioner–Respondent,

v.

David FRAZIER, an interested party, Respondent–Appellant.

No. 30944.

Supreme Court of Idaho, Boise, May 2005 Term.

April 13, 2006.

———

Davison, Copple, Copple & Cox, Boise, for appellant. Heather A. Cunningham argued.

Boise City Attorney's Office, Boise, for respondent. Matthew K. Wilde argued.

**2**

Skinner, Fawcett & Mauk, Boise, for respondent. Dennis Gibala appeared.

BURDICK, Justice.

David Frazier (Frazier) appeals to the Idaho Supreme Court from a district court decision authorizing the City of Boise (the City) to incur a public liability in order to expand the parking facilities at the Boise Airport. Frazier argues the agreement entered into by the City is in violation of Article VIII, § 3 of the Idaho Constitution requiring a public vote before incurring a debt or liability unless the proposed undertaking is "ordinary and necessary." Additionally, Frazier contends the parking expansion violates the prohibition on public loans or gifts of credit to private entities found in Article VIII, § 4 of the Idaho Constitution because portions of the expanded parking facilities will be leased by private rental car companies. For the reasons set forth below, we reverse the decision of the district court and remand for a determination of Frazier's costs and attorney fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The City has owned and operated an airport since 1926, and the Boise Airport has been at its current location since 1939. The Boise Airport serves as the principal airport for southwestern Idaho and eastern Oregon. The number of travelers passing through the airport is expected to grow substantially in the coming years.

The City sought judicial confirmation in district court to allow the City to enter into an agreement for the expansion of the airport's parking facilities. The proposed agreement involved the City incurring long term indebtedness to finance the project. Frazier filed a notice of appearance and opposed the City's petition for judicial confir-

mation. After the parties conducted discovery and a hearing was held, the district court entered findings of fact and conclusions of law and granted the City's petition.

The district court found parking capacity to be an integral part of the operation of a regional airport and the parking facilities at the Boise Airport to be inadequate to meet current or future needs. The district court additionally found that the proposed five level parking facility was not new construction, but instead was an expansion of the existing facility. As a result, the district court determined the expansion project was an "ordinary and necessary" expense that did not require a public vote for its approval, and that leasing parking space to rental car companies would not be an impermissible gift of the City's credit because such leases were consistent with public use of the facility.

Frazier filed a timely appeal that is now before this Court.

## II. STANDARD OF REVIEW

■ This Court defers to the factual findings of the district court unless those findings are clearly erroneous. *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999). This Court exercises free review of the district court's application of the relevant law to the facts. *Roberts v. State*, 132 Idaho 494, 496, 975 P.2d 782, 784 (1999). Constitutional issues are questions of law over which we also exercise free review. *State v. Weber*, 140 Idaho 89, 91, 90 P.3d 314, 316 (2004).

## III. ANALYSIS

Article VIII, § 3 of the Idaho Constitution generally bars cities from incurring debts or liabilities without first conducting an election to secure voter approval for the proposed expenditure.[1] The section, however, contains

1. The full text of Article VIII, § 3 of the Idaho Constitution, entitled "Limitations on county and municipal indebtedness," provides:
 No county, *city*, board of education, or school district, or other subdivision of the state, *shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two thirds (2/3) of the*

*qualified electors thereof voting at an election* to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within thirty (30) years from the time of contracting the same. Any

a notable exception. No public vote is required if the expenditure is for an "ordinary and necessary" expense "authorized by the general laws of the state. . . ." This exception is referred to as the "proviso clause." *City of Pocatello v. Peterson*, 93 Idaho 774, 778, 473 P.2d 644, 648 (1970).

In the present case, the district court ruled that the parking expansion was an ordinary and necessary expense within the meaning of the constitution. Consequently, the district court concluded the City was lawfully authorized to incur liabilities in order to finance its completion. Frazier argues the expansion is not an "ordinary and necessary" undertaking and therefore the City must obtain the consent of the voting public before entering into the proposed financing agreement.

## A. The Development of Article VIII, § 3

Article VIII, § 3 has been part of Idaho's Constitution since the beginning of statehood. The draft version of Article VIII, § 3 that was submitted to the 1889 Idaho Constitutional Convention was modeled after and nearly identical to Article XI, § 18 of the California Constitution of 1879. *See* 1 PROCEEDINGS AND DEBATES OF THE CONSTITUTIONAL CONVENTION OF IDAHO 1889, 589 (1912) (henceforth 1 PROCEEDINGS); CAL. CONST. of

1879, Art. XI, § 18. The intention was to prevent local government entities from incurring debts without approval from the voters and a clear plan to retire those debts. DONALD CROWLEY & FLORENCE HEFFRON, THE IDAHO STATE CONSTITUTION 170 (1994).

Broadly speaking, Article VIII, § 3 imposes two requirements to be met by local governments before incurring indebtedness. The first requirement is a public election securing two-thirds of the vote, and the second is the collection of an annual tax sufficient to pay the debt within thirty years. The remainder of the section consists of exceptions to those requirements, beginning with the previously mentioned proviso clause and continuing with language added in a series of subsequent amendments not applicable to our analysis.

When the draft version of Article VIII, § 3 was presented to the constitutional convention, it was amended by the delegates to add the words "provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state." *See* IDAHO CONST. art VIII, § 3; 1 PROCEEDINGS at 584–94. Delegate William Claggett offered the original proviso clause. *See* 1 PROCEEDINGS at

indebtedness or liability incurred contrary to this provision shall be void: *Provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state* and provided further that any city may own, purchase, construct, extend, or equip, within and without the corporate limits of such city, off street parking facilities, public recreation facilities, and air navigations facilities, and for the purpose of paying the cost thereof may, without regard to any limitation herein imposed, with the assent of two thirds (2/3) of the qualified electors voting at an election to be held for that purpose, issue revenue bonds therefor, the principal and interest of which to be paid solely from revenue derived from rates and charges for the use of, and the service rendered by, such facilities as may be prescribed by law, and provided further, that any city or other political subdivision of the state may own, purchase, construct, extend, or equip, within and without the corporate limits of such city or political subdivision, water systems, sewage collection systems, water treatment plants, sewage treatment plants, and may rehabilitate existing electrical generating facilities, and for the purpose of paying the cost thereof, may, without regard to

any limitation herein imposed, with the assent of a majority of the qualified electors voting at an election to be held for that purpose, issue revenue bonds therefor, the principal and interest of which to be paid solely from revenue derived from rates and charges for the use of, and the service rendered by such systems, plants and facilities, as may be prescribed by law; and provided further that any port district, for the purpose of carrying into effect all or any of the powers now or hereafter granted to port districts by the laws of this state, may contract indebtedness and issue revenue bonds evidencing such indebtedness, without the necessity of the voters of the port district authorizing the same, such revenue bonds to be payable solely from all or such part of the revenues of the port district derived from any source whatsoever excepting only those revenues derived from ad valorem taxes, as the port commission thereof may determine, and such revenue bonds not to be in any manner or to any extent a general obligation of the port district issuing the same, nor a charge upon the ad valorem tax revenue of such port district.
(Emphasis added).

4

586. Claggett explained his intent to the other delegates, stating: "[w]e all know that in the practical administration of county government, that there sometimes will be extraordinary expenses, I mean extraordinary expenses in the ordinary administration of affairs." *Id.* at 588. By way of example, Claggett mentioned the payment of witness fees. *Id.* Other delegates mentioned juror fees and criminal court expenses, *id.* at 590, the expense of controlling streams and ditches, *id.* at 592, and "any emergency" *id.* at 587.

### B. The Proposed Parking Expansion Is Not An "Ordinary And Necessary" Expense Under Article VIII, § 3

In determining whether the proposed parking expansion is ordinary and necessary, we turn first to the question of whether it is "ordinary." This Court has previously held an expense to be ordinary "if in the ordinary course of municipal business, or the maintenance of municipal property, it may be and is likely to become necessary." *Hanson v. City of Idaho Falls*, 92 Idaho 512, 514, 446 P.2d 634, 636 (1968).

Idaho law provides for local governments to maintain and operate airports. I.C. § 50–321. The City's proposal to expand the Boise airport's parking facilities to keep pace with rising demand is entirely consistent with "the ordinary course of municipal business" in operating City property and is a type of expense that "may be and is likely to become necessary." *See Hanson*, 92 Idaho at 514, 446 P.2d at 636 (defining "ordinary" in the context of the proviso clause). As a result, the City's proposed project is an "ordinary" expense under the circumstances before us.

The phrase "ordinary and necessary," however, is read in the conjunctive. *See Asson v. City of Burley*, 105 Idaho 432, 443, 670 P.2d 839, 850 (1983). Therefore, in order for the expenditure at issue to be "ordinary *and* necessary" it must also qualify as "necessary." *See id.* The proper definition of "necessary" as it is used in the proviso clause merits especially close scrutiny in this case. We have articulated two definitions of the term as it appears in the clause. Most recently, this Court quoted Black's Law Dictio-

nary for the proposition that " '[n]ecessary' means 'indispensible' " [sic]. *Peterson*, 93 Idaho at 778, 473 P.2d at 648. The difficulty with defining "necessary" as "indispensable" is that the definition is circular and provides little guidance. In particular, such a definition does not assist a court in distinguishing truly necessary expenditures from those that are merely desirable or convenient.

Earlier, in *Dunbar v. Board of Commissioners of Canyon County*, 5 Idaho 407, 412, 49 P. 409, 411 (1897), we wrote that in order for an expense to qualify as necessary under the proviso clause "there must exist a necessity for *making the expenditure at or during such year.*" (Emphasis added). The meaning of "necessary" in the proviso clause takes on added clarity under the *Dunbar* test because expenditures qualify as "necessary" only if they are truly urgent. The *Dunbar* test has the additional benefit of matching closely with the types of expenditures the delegates at the Idaho Constitutional Convention discussed when they debated Article VIII, § 3 of our state constitution. Those expenditures included unavoidable expenses, such as carrying on criminal trials and abating flood damage, that could not be delayed. *See* 1 PROCEEDINGS at 590–2. We observe that the expenditures contemplated by the delegates involved immediate or emergency expenses, such as those involving public safety, or expenses the government entity in question was legally obligated to perform promptly.

Although our decisions in the years since *Dunbar* was handed down have been broadly consistent with the *Dunbar* test, we have not employed that test expressly. *See e.g., Bd. of County Comm'rs v. Idaho Health Fac. Auth.*, 96 Idaho 498, 510, 531 P.2d 588, 600 (1975) (expanding a hospital); *Peterson*, 93 Idaho 774, 473 P.2d 644 (replacing unsafe airport terminal); *Hanson v. City of Idaho Falls*, 92 Idaho 512, 446 P.2d 634 (1968) (creating a police retirement fund); *Corum v. Common Sch. Dist. No. 21*, 55 Idaho 725, 47 P.2d 889 (1935) (paying teacher salaries); *Lloyd Corp. v. Bannock County*, 53 Idaho 478, 25 P.2d 217 (1933) (providing relief for the unemployed); *Thomas v. Glindeman*, 33 Idaho 394, 195 P. 92 (1921) (providing for

police and fire protection services); *Jones v. Power County,* 27 Idaho 656, 150 P. 35 (1915) (paying organizational expenses for a new county); *Hickey v. City of Nampa,* 22 Idaho 41, 124 P. 280 (1912) (rebuilding the city's destroyed water system for fire protection and domestic water supply); *Butler v. City of Lewiston,* 11 Idaho 393, 83 P. 234 (1905) (satisfying a tort judgment and paying the salaries of city officers and employees). Here, we return to the test stated in *Dunbar* and hold that in order for an expenditure to qualify as "necessary" under the proviso clause of Article VIII, § 3 there must exist a necessity for making the expenditure at or during such year.

In *Bannock County v. C. Bunting & Co.,* 4 Idaho 156, 167, 37 P. 277, 280 (1894), this Court wrote that an expenditure to provide for a temporary jail was an ordinary and necessary expense for Bannock County. Such an expense, we observed, "might very properly be expended, when necessary, for repairing a jail already built; and as it was paid for a temporary jail" it was an ordinary and necessary expense. *Id.* In the same case, this Court determined a debt to purchase land on which to build a permanent courthouse was not ordinary and necessary. We wrote that "[i]t is, of course, the duty of the commissioners to provide a suitable place for holding of the courts and public offices, jails, etc.; but such rooms must be temporarily provided, at as little expense as is consistent with providing suitable quarters, until the question can be submitted to the people." *Id.* at 168, 37 P. at 281.

Discussing Article VIII, § 3 of our state constitution, we observed in *Williams v. City of Emmett* that

> [t]he Idaho Constitution is imbued with the spirit of economy, and in so far as possible it imposes upon the political subdivisions of the state a pay-as-you-go system of finance. The rule is that, without the express assent of the qualified electors, municipal officers are not to incur debts for which they have not the funds to pay. Such policy entails a measure of crudity and inefficiency in local government, but doubtless the men who drafted the Constitution, having in mind disastrous examples of optimism and extravagance on the part of public officials, thought best to sacrifice a measure of efficiency for a degree of safety. The careful, thrifty citizen sometimes gets along with a crude instrumentality until he is able to purchase and pay for something better. And likewise, under the Constitution, county officers must use the means they have for making fair and equitable assessments until they are able to pay for something more efficient or obtain the consent of those in whose interests they are supposed to act.

51 Idaho 500, 505, 6 P.2d 475, 476 (1931) (quoting *Dexter Horton Trust & Savings Bank v. Clearwater County,* 235 F. 743, 754 (D.Idaho 1916)).

Applying our interpretation of the phrase "ordinary and necessary" in this instance, we observe that the parking expansion proposed by the City falls outside the proviso clause. We do not doubt the City's contention that parking facilities are an important part of a well functioning airport. Nor do we question the important role the Boise airport plays in our transportation infrastructure and regional economy. However, regardless of the importance of public airport parking, circumstances do not require the erection of a permanent parking structure on an immediate or emergency basis. The volume of traffic passing through the Boise airport has been growing for some time, and the airport itself has been improved to meet this rising demand. Rather than being a sudden emergency thrust upon the City, the need for expanded parking facilities is an expected expense for which the City has been able to plan. In the short term, the City has been shuttling travelers unable to secure onsite airport parking back and forth from parking areas located offsite. As with the courthouse and jail in *Bannock County,* we see that here the City is in a position to provide a temporary substitute to a permanent structure. Our state constitution requires the City to make do with such measures until sufficient normal revenue becomes available or the question of whether to enter into debt to build the desired permanent structure can be submitted to the people in accordance with Article VIII, § 3.

In its ruling in this case, the district court determined the proposed parking expansion was an ordinary and necessary expense because it found adequate parking facilities to be "critical" to the operation of the Boise Airport. However, that parking facilities are important, or even critical to the operation of the airport is insufficient to satisfy the constitutional requirements of Article VIII, § 3. Instead, we have held that there must exist a necessity not simply for the expenditure, but also for making the proposed expenditure at or during such year. *Dunbar*, 5 Idaho at 412, 49 P. at 411.

Additionally, the district court ruled the proposed expenditure was ordinary and necessary because the City's plan called for the expansion of an existing parking facility rather than new construction. Specifically, the City intended to build a multiple floor parking garage on land already being used as surface parking, and the parking garage thus created would be connected to an existing multiple floor parking structure. The district court accurately cited to our decisions in *Board of County Commissioners*, 96 Idaho 498, 531 P.2d 588, and *Peterson*, 93 Idaho 774, 473 P.2d 644, for the proposition that expenses incurred in the repair and improvement of existing facilities can qualify as ordinary and necessary under the proviso clause.

Both *Board of County Commissioners* and *Peterson*, however, are distinguishable from this case. First, in both cases we noted the important safety implications of the proposed expenditures. In *Board of County Commissioners* we stressed the impact of public health in relation to the proposed hospital expansion. 96 Idaho at 510, 531 P.2d at 600. In *Peterson* we noted the safety threat posed to passengers by an unsound airport passenger terminal and other facilities the City of Pocatello sought to replace. 93 Idaho at 778–79, 473 P.2d at 648–49. The impact on public safety found in both decisions provided the requisite urgency missing from the present case.

Second, the logic holding that repair and improvement of existing facilities can qualify as an ordinary and necessary expense, while sound, simply cannot be extended so far as to cover the circumstances of this case. Con-

verting a flat parking lot into a five floor parking garage is not a repair, nor any recognizable form of maintenance. Likewise, while it is an "improvement" of the existing surface parking, the expansion is so profound as to constitute an entirely new construction in every meaningful sense. Accordingly, we hold that the proposed expenditure is not "necessary" within the meaning of the proviso clause in Article VIII, § 3 and therefore the City must obtain the consent of the voting public before entering into the proposed financing agreement.

As a result of our holding, there is no need for this Court to reach the remaining questions presented by the Appellant.

## C. Attorney Fees

 Both parties assert they are entitled to attorney fees on appeal. The City requests attorney fees on appeal pursuant to I.C. § 12–121. Idaho Code § 12–121 permits an award of attorney fees in a civil action to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation. *Mutual of Enumclaw Ins. Co. v. Pedersen*, 133 Idaho 135, 139, 983 P.2d 208, 212 (1999). The City is not the prevailing party on appeal, and therefore no award of attorney fees is warranted. Frazier argues he is entitled to attorney fees under I.C. § 7–1313, which provides for an award of reasonable attorney fees for a party who has appeared and prevailed against a political subdivision's petition for judicial confirmation. We agree, and grant Frazier an award for both the costs and attorney fees he incurred in this action.

## IV. CONCLUSION

In order for an expenditure to qualify as "necessary" as the word is used in the proviso clause to Article VIII, § 3 of the Idaho Constitution, there must exist a necessity for making the expenditure at or during such year. *Dunbar*, 5 Idaho at 412, 49 P. at 411. The required urgency can result from a number of possible causes, such as threats to public safety, *Board of County Comm'rs*, 96 Idaho at 510, 531 P.2d at 600, the need for

repairs, maintenance, or preservation of existing property, *Asson,* 105 Idaho at 441–42, 670 P.2d at 848–49, or a legal obligation to make the expenditure without delay, *see Butler,* 11 Idaho at 404, 83 P. at 238. Whether a proposed expenditure is ordinary and necessary depends on the surrounding circumstances of each case. *Asson,* 105 Idaho at 442, 670 P.2d at 849; *Board of County Com'rs,* 96 Idaho at 510, 531 P.2d at 600; *Peterson,* 93 Idaho at 776, 473 P.2d at 646. Here, the circumstances of this case do not require an immediate or emergency expenditure exempting the City from the election requirement of Article VIII, § 3 of the Idaho Constitution. Accordingly, we reverse the district court's confirmation of the City's authority to enter into the proposed lease and trust agreement for the expansion of airport parking facilities. Costs and attorney fees are granted to the Appellant, and we remand to the district court pursuant to I.C. § 7–1313 and I.R.C.P. 54 for a determination of costs and a reasonable sum of attorney fees below and on appeal.

Justice EISMANN and Justice Pro Tem WALTERS concur.

Chief Justice SCHROEDER, dissenting without opinion.

BUSH, J., pro tem, specially concurring.

I concur in the result of the majority decision, but respectfully disagree with the reasoning of that decision and therefore write separately.

I agree that the judgment of the district court should be reversed and remanded. However, it is not necessary to attempt the difficult task of sorting and reconciling the history of case law interpreting the "ordinary and necessary expense" proviso of Art. VIII, § 3 of our Constitution because the specific question of whether or not an off street parking facility is such an expense is already answered by the specific reference to "off street parking facility" in the language of Art VIII, § 3. The express reference to "off street parking facility," in the context of making such a facility eligible for a revenue bond exception to the general rule, makes clear that such a facility cannot be an "ordinary and necessary expense."

The pertinent language is:

§ 3. **Limitations on county and municipal indebtedness.—**

\* \* \*

"Provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state and provided further that any city may own, purchase, construct, extend, or equip, within and without the corporate limits of such city, *off street parking facilities,* public recreation facilities, and air navigation facilities, and for the purpose of paying the cost thereof may, without regard to any limitation herein imposed, with the assent of two thirds (2/3) of the qualified electors voting at an election to be held for that purpose, issue revenues bonds therefor, the principal and interest of which to be paid solely from revenue derived from rates and charges for the use of, and the service rendered by, such facilities as may be prescribed by law. . . ."

(Emphasis supplied.)

The words "off street parking facilities" first appeared in S.L.1949, p. 598, in the language of a proposed constitutional amendment, which was then ratified by the voters in the 1950 general election. Water systems, sewage collection systems, water treatment plants and sewage treatment plants were also specifically identified in the 1950 amendment. (In 1964, another amendment added port districts. In 1966, "public recreation facilities" were added. In 1968, "air navigation facilities" were included and rehabilitation of existing electrical generating facilities joined the list in 1976.) The 1950 amendment provided cities an alternative means of gaining voter approval of certain types of government expenses that *otherwise* required a 2/3 majority vote of the electorate. The 1950 amendment created a so-called "special fund" alternative for the voters to consider. The political theory behind that alternative is transparent—voters who understand that the cost of building a facility will be paid over time by fees charged for use

of the facility, rather than with direct tax dollars, will be more likely to vote in favor of a bond referendum. Courts in some other states had created such an exception to the general rule of voter approval for large spending projects by judicial interpretation of the particular spending imitation in their state constitutions. The Idaho Supreme Court refused to do so, as described in this article on the subject:

> The issue of what constitutes an "indebtedness or liability" has been a recurring subject of litigation over the century since the adoption of the Idaho Constitution. In the early case of *Feil v. City of Coeur d'Alene*, the Idaho Supreme Court adopted a far more restrictive view of this term than did the courts of most other states, holding that the voter approval requirement of article VIII, section 3, applied not only to general obligation debt payable from property taxes, but also to indebtedness payable solely from the revenues of revenue-producing public works. Thus, the *Feil* court rejected the so-called "special fund" doctrine recognized as an exception to constitution debt limitation provisions in the great majority of jurisdictions. Although the Idaho Supreme Court has recognized that some types of obligations do not constitute "indebtedness or liability" within the meaning of the constitutional provision, and has also held that the limitation does not apply to certain types of entities, it has never retreated from the holding in *Feil* in that special revenue debt is an "indebtedness or liability" within the meaning of article VIII, section 3 of Idaho's constitution.

Michael C. Moore, *The Idaho Constitution and Local Governments—Selected Topics*, 31 Idaho L.Rev. 417, 454–455 (1980) (footnotes omitted).

The *Feil* decision has remained the law in Idaho to this day, even though various attempts have been made over the years to try to persuade the Idaho Supreme Court to choose a new course on the issue, all unsuccessful, *e.g.*:

> It is urged that we overrule *Feil v. City of Coeur d'Alene*, 23 Idaho 32, 129 P. 643 (1912), and apply the "special fund" doctrine in this case. That doctrine, accepted by a great majority of cases, holds that a municipality does not contract indebtedness or incur liability, within the constitutional limitation, by undertaking an obligation which is to be paid out of a special fund consisting entirely of revenue or income from the property purchased or constructed. *Feil* dealt with a decision by the city of Coeur d'Alene to purchase a municipal water system, to be financed by bonds which would be repaid out of a fund containing only the revenues derived from operation of the water works. It was argued that since no indebtedness was contracted by the city itself—but rather only by the bond fund—the expenditure did not come under Idaho Const. Art. 8, § 3. The *Feil* court rejected that argument, reasoning that Idaho's expansive constitutional provision (which, unlike several other states examined by the court, contained the word "liability" as well as "debt") included an indebtedness paid out of a fund separate from the city's general fund. The court was critical of "subtleties and refinements of reasoning" utilized to suggest that no liability is incurred where a special fund is involved. 23 Idaho at 49, 129 P. at 649. Since *Feil*, a series of cases have declined to apply the special fund doctrine. *See, Boise Development Co. v. Boise City*, 26 Idaho 347, 143 P. 531 (1914); *Miller v. City of Buhl*, 48 Idaho 668, 284 P. 843 (1930); *Williams v. City of Emmett*, 51 Idaho 500, 6 P.2d 475 (1931); *Straughan v. City of Coeur d'Alene*, 53 Idaho 494, 24 P.2d 321 (1932); *O'Bryant v. City of Idaho Falls*, 78 Idaho 313, 303 P.2d 672 (1956).

*Asson v. City of Burley*, 105 Idaho 432, 438–439, 670 P.2d 839, 845–846 (1983).

The *Asson* court went on to say:

> However, *Feil* and its quite extensive succession of authority no longer prevent application of the special fund exception because that exception has been made a part of Idaho law by way of amendments to Art. 8, § 3. *See, Idaho Water Resource Board v. Kramer*, 97 Idaho 535, 548 P.2d 35 (1976). The first such amendment, passed in 1950, authorized cities to purchase or construct water and sewage sys-

tems, treatment plants, and off street parking facilities to be financed by bonds, "the principal and interest of which to be paid solely from revenue derived from rates and charges for the use, and the services rendered by, such systems, plants and facilities ..." Subsequent amendments have increased the scope of the special fund exception to include port districts (1964), public recreation facilities (1966), air navigation facilities (1968), and rehabilitation of existing electrical generating facilities (1976). We note that, with the exception of port districts, indebtedness of a city for any of the purposes listed, even though not subject to the tax assessment provision of Art. 8, § 3, is nevertheless specifically conditioned on voter approval. The intent of the framers of the constitutional amendments, and the electorate through their ratification, is clear that approval of a municipality's qualified voters is necessary whether its Art. 8, § 3 indebtedness or liability is against the general fund of the city, and its tax revenues, or limited to a special fund of project-generated revenues.

*Id.,* at 439, 670 P.2d at 846 (footnotes omitted).

The *Asson* decision on that issue was entirely consistent with an earlier decision on the same subject, issued approximately a year and a half after the passage of the 1950 amendment:

Prior to the 1950 amendment to Section 3, Article 8 of the Constitution, supra, this court had held, in a series of decisions, that bonds payable out of revenues of municipal utilities created an "indebtedness, or liability," within the provisions of that section and that all of the original limitations imposed thereby must be complied with. *Feil v. City of Coeur d'Alene,* 23 Idaho 32, 129 P. 643, 43 L.R.A.N.S. 1095; *Miller v. City of Buhl,* 48 Idaho 668, 284 P. 843, 72 A.L.R. 682; *Williams v. City of Emmett,* 51 Idaho 500, 6 P.2d 475; *Straughan v. City of Coeur d'Alene,* 53 Idaho 494, 24 P.2d 321. Cf. Annotations, 72 A.L.R. 687, 96 A.L.R. 1385, 146 A.L.R. 328. The trend toward the use of revenue bonds to enable municipalities to acquire needed utilities

has continued and in order to enable the municipalities of this state to employ that method of financing such utilities, and to remove the restrictions of the original section 3 from such financing operations, the 1950 amendment was proposed and adopted. So that henceforth, so long as the conditions contained in the amendment are observed, the municipalities of this state may issue revenue bonds for the purposes therein enumerated "without regard to any limitation" contained in the original section.

*Schmidt v. Village of Kimberly,* 74 Idaho 48, 60, 256 P.2d 515, 522 (1953).

In other words, this Court has repeatedly rejected opportunities to treat certain kinds of projects—proposed to be funded out of their own revenues—as some sort of "special fund" exception to the general prohibition of Art. VIII, § 3 against long-term indebtedness. However, this Court has also recognized that certain amendments made to Art. VIII, § 3 have created a "special fund" exception for some types of projects and that such amendments were enacted by the people to give cities the constitutional power to seek voter approval in an alternative manner. Projects such as off street parking facilities, which are given such favored treatment, are clearly *not* "ordinary and necessary" under the meaning of Art. VIII, § 3. If an off street parking facility is an ordinary and necessary expense, then there was no reason for the legislature to propose, and the electorate to approve, an amendment to Art. VIII, § 3 that had as its sole purpose the creation of a "special fund" exception to the general rule that prohibited the incurrence of a long term debt or liability for such projects without voter approval.

It might be argued that the use of the conjunctive "and" in the language of the 1950 amendment means that an off street parking facility could be an ordinary and necessary expense funded by revenue bonds, regardless of the fact that such a facility was included by name in the "exception" language of the 1950 amendment. However, such an argument runs afoul of this Court's description of the 1950 amendment in the *Schmidt v. Village of Kimberly* decision, which identified

**10**

the purpose of the amendment as allowing "the municipalities of this state [to] issue revenue bonds for the purposes therein enumerated 'without regard to any limitation' contained in the original section." *Schmidt*, 74 Idaho at 60, 256 P.2d 515. If an off street parking facility is an ordinary and necessary expense, then there is no limitation on the municipality's ability to incur long term indebtedness to build such a facility and, similarly, no need for special treatment for such facilities in the provisions of Art. VIII, § 3. In other words, the 1950 amendment has no meaning if it is a "separate" exception, independent and apart from the "ordinary and necessary expense" proviso.

Therefore, even though this issue was not the subject of briefing or argument by the parties, this constitutional question should be decided in the narrowest fashion possible, by focusing upon the inclusion of "off street parking facilities" in the existing language of Art. VIII, § 3. It is not necessary to retravel the difficult path of prior decisions dealing with what constitutes an "ordinary and necessary" expense under our Constitution. Those prior decisions have created a settled landscape in the law, albeit an arguably rubbled one. Hence, because it is not necessary to the proper result in this case, the majority decision amounts to an unnecessary reassembling of that settled law and runs counter to our accepted rules of interpretation concerning our Constitution. This Court has previously held that "when a case can be decided upon a ground other than a constitutional basis, the Court will not address the constitutional issue unless it is necessary for a determination of the case." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 710, 791 P.2d 1285, 1289 (1990). The corollary should also hold true—that we should not attempt to decide *more* of a constitutional issue than is necessary for a determination of the case.

Additionally, as a general matter, the statutory rules of construction apply to the interpretation of constitutional provisions. *Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990). Those rules—when applied to the appropriate construction of Art. VIII, § 3—support my view of the appropriate reasoning for the result in this case, *e.g.*:

> The cardinal rule of statutory construction is that where a statute is plain, clear and unambiguous, we are constrained to follow that plain meaning and neither add to the statute nor take away by judicial construction. *Moon v. Investment Board*, 97 Idaho 595, 596, 548 P.2d 861, 862 (1976). Statutory interpretation always begins with an examination of the literal words of the statute. *In re Permit No. 36–7200*, 121 Idaho 819, 822, 828 P.2d 848, 851 (1992). Unless the result is palpably absurd, we must assume that the legislature means what is clearly stated in the statute. *Id.* We must give the words their plain, usual and ordinary meaning, and there is no occasion for construction where the language of a statute is unambiguous. *Sherwood v. Carter*, 119 Idaho 246, 254, 805 P.2d 452, 460 (1991). We furthermore must give every word, clause and sentence effect, if possible. *In re Permit No. 36–7200*, 121 Idaho at 822, 828 P.2d at 851.

*Poison Creek Pub., Inc. v. Cent. Idaho Pub., Inc.*, 134 Idaho 426, 429, 3 P.3d 1254, 1257 (Ct.App.2000).

Accordingly, because the trial court should be reversed on the ultimate issue but for different reasons, I concur only in the result.