(No. 5692. December 23, 1931.)

P. M. WILLIAMS, JAMES E. DAVIS, M. A. PORTLOCK, ADELAIDE BLISS, EDWARD ALLEN, SARAH ALLEN, E. S. STOWELL and H. D. BUYS, Respondents, v. CITY OF EMMETT, a Municipal Corporation, and FAGEOL MOTOR SALES COMPANY, a Foreign Corporation, Appellants.

[6 Pac. (2d) 475.]

Martin & Martin, George C. Huebener and T. L. Martin, for Appellants.

J. P. Reed and Finley Monroe, for Respondents.

McNAUGHTON, J.—■ On the tenth day of May, 1928, the City of Emmett entered into an agreement with the Fageol Motor Sales Company whereby, in consideration of the terms and conditions of the agreement, the Sales Company delivered a street sprinkler to the city on May 3, 1928, and received $1141.31 cash, termed rental until June 30, 1928, and the city agreed to pay $2,174.68 on or before July 3, 1928, as rental from July 1, 1928, until December 31, 1928, and agreed to pay $2,445.05 on or before May 1, 1929, as rental from January 1, 1929, until December 31, 1929, and agreed to pay $2,306.71 on or before May 1, 1930, as rental from January 1, 1930, to December 31, 1930. The total amount of rentals stipulated was $8,067.75 and the city was to have the sprinkler from May 1, 1928, every day until December 31, 1930. The city was to pay taxes, insurance, license fees, cost of repairs, upkeep and housing. The city agreed to pay these rental sums out of special assessments collected out of its sprinkling and flushing districts to be created in 1928, 1929 and 1930.

It is provided:

"If said Lessee (city) shall fail to do and perform any of the acts or things required to be done by it under any of the terms of this lease, the said Lessor (Sales Company) may at its option terminate said lease and without notice or demand take possession of said personal property wherever and whenever found and with or without notice or demand may elect to treat the Lessee in default, and in such event all rights of said Lessee in said personal property shall immediately cease and terminate and the said Lessor shall be released from all obligations to allow said Lessee to use said personal property and all sums theretofore paid as rental for the use of said personal property shall remain and be the property of the Lessor and shall be considered compensation for the use, wear, tear and depreciation of the same. . . . .

"It is further agreed that the Lessor hereby gives and grants unto the Lessee the option and privilege to purchase the above described personal property at any time during any period that it has said property rented for the sum of $8050.15 or for such lesser sum as the parties hereto may agree upon, it being understood that in the event the said Lessee shall so exercise this option to purchase said personal property from the Lessor that such rental payments as have theretofore been made by said Lessee shall be credited upon the purchase price therefor and be deducted therefrom."

It is quite apparent from the record that the necessary revenue to meet the total indebtedness undertaken or liability of this contract was not provided for in the year in which it was contracted, pursuant to any bond election or otherwise.

Section 3, article 8, of the Idaho Constitution provides:

"No county, city, town, township, board of education, or school district, or other subdivision of the state shall incur any indebtedness or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be

held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: Provided, That this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state.''

Judge Dietrich, in *Dexter Horton T. & Sav. Bank v. Clearwater County*, 235 Fed. 743, 754, in discussing this provision of the Constitution, said:

''The Idaho Constitution is imbued with the spirit of economy, and in so far as possible it imposes upon the political subdivisions of the state a pay-as-you-go system of finance. The rule is that, without the express assent of the qualified electors, municipal officers are not to incur debts for which they have not the funds to pay. Such policy entails a measure of crudity and inefficiency in local government, but doubtless the man who drafted the Constitution, having in mind disastrous examples of optimism and extravagance on the part of public officials, thought best to sacrifice a measure of efficiency for a degree of safety. The careful, thrifty citizen sometimes gets along with a crude instrumentality until he is able to purchase and pay for something better. And likewise, under the Constitution, county officers must use the means they have for making fair and equitable assessments until they are able to pay for something more efficient, or obtain the consent of those in whose interests they are supposed to act.''

The recent extensive development of payment on the instalment plan has taxed the ingenuity of man to invent a shift whereby municipalities may circumvent this constitutional requirement in public financing.

The constitutional requirement is plain. No indebtedness or liability except for ordinary and necessary expenses shall in any manner or for any purpose be incurred by a municipality exceeding the revenue provided for it that year unless,

first, the assent of two-thirds of the qualified electors voting at an election for that purpose shall authorize such indebtedness or liability and, second, provision shall be made for an annual tax sufficient to pay the interest on the indebtedness as it falls due and provide a sinking fund for the payment of the principal within twenty years.

Municipalities in this state have by one engagement or another endeavored to acquire property, the cost of which was beyond the revenue provided for it in the current year without the bond election and without provision for the annual tax required by the Constitution. This of course has always been upon the theory that the undertaking on the part of the city in the matter was short of a promise constituting an indebtedness as contemplated by the Constitution. By virtue of the decisions in such cases, the law with reference to the effect of this section of the Constitution is pretty well settled in this state.

In this case there is a good deal of discussion in the briefs as to what the instrument before us may be most properly denominated. The plaintiffs say its purpose is to effect a sale of the sprinkler to the city on the instalment plan and it should be called a conditional sales contract. The defendants say we should call it a lease. The instrument itself is denominated an agreement. We doubt whether it makes any difference whether it may be more appropriately denominated a lease or a conditional sales contract. The important matter is, does it create "any indebtedness or liability in any manner or for any purpose, exceeding in that year the income and revenue provided for it for such year"?

It is claimed that the city may enter into a binding lease for future years for services needed in those years; that such an agreement is not creating a present indebtedness within the meaning of this constitutional provision. This court expressed a contrary view, and we think properly, in *Boise Dev. Co. v. Boise City,* 26 Ida. 347, 143 Pac. 531, 535. On this point the court said:

"But if this contract was valid, would not the courts intervene to compel the city authorities to comply with all its terms and provisions? Conceding that it is true that it

would not be 'legally permissible' to call the aggregate amounts in the contract to be paid a present *debt,* then we submit that it would be a 'present *liability'* for such aggregate amounts. If the contract was valid, by its terms $1225 would become due at the end of each quarter of each year of its existence, as the services were performed, from the beginning of said services to the expiration of the five years for which it was made, and this sum would then be a *debt,* but the city incurred a liability for the aggregate sum of $24,500 at the date the contract was executed.''

■ ■ It is next claimed that the restriction upon indebtedness does not apply to debts payable from special assessments of local improvement districts.

The city here was not contracting for a local improvement district, but was contracting as the city for its benefit and only in anticipation of such a district to be formed by it in 1928 and in anticipation of such a district to be formed in 1929 and in anticipation of such a district to be formed in 1930. It was paying down $1141.31 out of the city's sprinkling fund. This agreement was the city's agreement. We do not think it was only pledging revenues from a local improvement district. But if such were the case this court has held that a city cannot pledge its revenues from any source whatever without creating an indebtedness subject to this constitutional restriction. (*Feil v. City of Coeur d'Alene,* 23 Ida. 32, 129 Pac. 643, 43 L. R. A., N. S., 1095; *Boise Dev. Co. v. Boise City, supra; Miller v. City of Buhl,* 48 Ida. 668, 72 A. L. R. 682, 284 Pac. 843.)

■ Nor can we look upon this agreement as evidencing an ordinary or necessary expense. There is nothing in the record to bring it within that proviso. We are quite certain that this agreement creates a liability on the part of the city in violation of section 3, article 8, of our Constitution as the provisions of that section have been construed by this court in *Feil v. City of Coeur d'Alene, supra, Boise Dev. Co. v. City of Boise, supra,* and *Miller v. City of Buhl, supra.* It follows that the contract was void and its execution subject to restraint.

The most serious difficulty confronting the court in this suit is the fact that, though subject to restraint, the parties in apparent good faith have largely carried out the terms of the agreement.

The trial court not only restrained further action pursuant to the agreement, but required the defendant Fageol Motor Sales Company to pay into the city treasury all sums of money paid to it by the city.

This court has repeatedly held that one who seeks equity must do equity. (*Fales v. Weeter Lumber Co.*, 26 Ida. 367, 143 Pac. 526; *Weber v. Pend d'Oreille Mining & Reduction Co., Ltd.*, 35 Ida. 1, 203 Pac. 891; *Vinyard v. North Side Canal Co., Ltd.*, 38 Ida. 73, 223 Pac. 1072.)

While it is true that plaintiffs as taxpayers could not offer to do equity for want of power to carry out such an offer, nevertheless it was their duty to tender issues sufficient to permit the court to enter an equitable decree on the relief asked with reference to moneys paid by the city on execution of the illegal agreement. Clearly the court could not enter an equitable decree without taking account of the benefits to the city resulting from the execution of the contract. The city could not have these benefits and a return of the money paid out on account of them too, even though the agreement under which the benefits were had was illegal.

The complaint does not charge that the payments made by the city pursuant to this agreement were more than the reasonable value of the use of this sprinkler. It is admitted in the record that the sprinkler was used by the city as contemplated by the agreement. No issue is tendered as to the value of this use, clearly beneficial to the city. No fraud is alleged or shown in this case. The contract is not *malum in se* nor is it prohibited in law under a penalty which renders its making a penal offense. It is simply a contract illegal and void and therefore unenforceable because the city officials did not pursue the methods provided by law to accomplish the objects of the agreement. The city, however, did use the street sprinkler and there was nothing unlawful in that use.

The rule as to recovering back money paid on account of the execution of such an illegal contract in whole or in part is well stated in *Vincennes Bridge Co. v. Board of County Commrs.*, 248 Fed. 93, as follows:

"Where a contract is beyond the powers of a corporation, so that it cannot make it by any means at its command, where it is *malum in se,* and where it is prohibited by law under a penalty which renders its making a penal offence, a county or city which has paid money under it without receiving any benefit therefrom may recover that money back. But where a county or city has the corporate power to make a contract, the object of which is legitimate, but the contract is invalid, so that it cannot be legally enforced, because the officers of the county, who had the power by pursuing the methods prescribed by law to accomplish the object of the contract, fail to pursue those methods, and for that reason the contract is invalid, and it has been executed, the county or city has accepted and holds the benefit of its execution, and has paid therefore in part, it may not, while it retains that benefit, recover back the money it has paid. *San Francisco Gas Co. v. City of San Francisco,* 9 Cal. 453, 469, 470; *Pimental v. City of San Francisco,* 21 Cal. 352, 361, 362, 363, 366; *Brown v. City of Atchison,* 39 Kan. 37, 46, 54, 7 Am. St. 515, 17 Pac. 465; *Parkersburg v. Brown,* 106 U. S. 487, 500, 501, 503, 1 Sup. Ct. 442, 27 L. ed. 238; *Chapman v. County of Douglas,* 107 U. S. 348, 355, 356, 357, 2 Sup. Ct. 62, 27 L. ed. 378; *Hitchock v. Galveston,* 96 U. S. 341, 350, 351, 24 L. ed. 659; *Louisiana v. Wood,* 102 U. S. 294, 298, 26 L. ed. 153; *Logan County National Bank v. Townsend,* 139 U. S. 27, 68, 74, 11 Sup. Ct. 496, 35 L. ed. 107; *Aldrich v. Chemical National Bank,* 176 U. S. 618, 628, 629, 20 Sup. Ct. 498, 44 L. ed. 611; *Geer v. School District No. 11,* 111 Fed. 682, 684, 685, 686, 690, 49 C. C. A. 539. . . . . "

The judgment enjoining further execution of the contract is affirmed. In all other respects the judgment is reversed. No costs are awarded.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.