446 P.2d 634

Dormand O. HANSON, Clyde Neibaur, Terry B. McMurdo, Grover B. McMurdo, Jay Roper, Roy G. Rainey, LeRoy E. Hinckley, Farrell E. Fullmer, W. Dean Denning and James A. Parry, Plaintiffs-Appellants,

v.

**CITY OF IDAHO FALLS**, Defendant-Respondent.

No. 10217.

Supreme Court of Idaho.

Oct. 31, 1968.

Alvin Denman, Idaho Falls, for appellants.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for appellee.

SPEAR, Justice.

Appellants are all former members of the Idaho Falls police department. They brought this action to recover the entire amount deducted from their salaries and placed in the Policeman's Retirement Fund. Appellants contend that the law creating the fund is unconstitutional. The district court found that the law was constitutional and granted summary judgment in favor of the defendant city, respondent here. The Policeman's Retirement Fund (P.R.F.) was created pursuant to Title 50, Chapter 21 of the Idaho Code enacted in 1947 (revised and recompiled as Title 50, Chapter 15 of the Idaho Code in 1967). The P.R.F. Act *permitted* cities to establish a fund to provide municipal policemen with retirement compensation and disability, death and funeral benefits. In the event of the death of a policeman, certain benefits are also provided for surviving widows and minor children or dependent parents. The plan is funded by deductions up to 4% of the individual policeman's salary and a contribution by the city of the revenue derived by a levy not to exceed two mills assessed against property within the city's corporate limits. The fund is administered by a board consisting of the city council and three police officers elected by members of the force. The City of Idaho Falls voluntarily set up a policeman's retirement fund and a board to administer the fund in compliance with the P.R.F. Act in 1947, long prior to the employment of any of appellants as policemen. Appellants contend that the P.R.F. Act violates art. VIII §§ 3 and 4, and art. XII § 4 of the constitution of the State of Idaho. It is the opinion of this court that the Act is constitutional.

The asserted violation of art. VIII, § 3, presents the most serious challenge. Accordingly, we deal with it first. This section provides, in part:

*"Limitations on county and municipal indebtedness.—No* county, city, town, township, board of education, or school district, or other *subdivision of the state, shall incur any* indebtedness, or *liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year,* without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such in-

debtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within thirty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void; *provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state * * *."* .(emphasis added)

Contrary to many jurisdictions, Idaho has chosen to adhere to the plain and obvious meaning of this broad constitutional prohibition. The decisions of this court have given force to the underlying purpose of this section, as succinctly stated in Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475 (1931):

"The Idaho Constitution is imbued with the spirit of economy, and in so far as possible it imposes upon the political subdivisions of the state a pay-as-you-go system of finance. The rule is that, without the express assent of the qualified electors, municipal officers are not to incur debts for which they have not the funds to pay. * * * County officers must use the means they have for making fair and equitable assessments until they are able to pay for something more efficient, or obtain the consent of those in whose interests they are supposed to act." Quoting from Dexter Horton T. & Sav. Bank v. Clearwater County, 9 Cir., 235 F. 743, at p. 754.

■ Insofar as the City of Idaho Falls is concerned, whether or not it has incurred any *indebtedness,* it undoubtedly has incurred a *liability* within the scope of art. VIII, § 3. "Liability" is a much more sweeping and comprehensive term than "indebtedness." Feil v. City of Coeur d'Alene, 23 Idaho 32, 129 P. 643 (1912); Boise Development Co., Ltd. v. Boise City, 26 Idaho 347, 143 P. 531 (1914); Straughan v. City

of Coeur d'Alene, 53 Idaho 494, 24 P.2d 321 (1932). Although the amount thereof can be determined only through a proper and thorough actuarial study, the policemen have an inherent right to some contribution by the city each year. The Fund must be financially sound. Such a right creates a concomitant duty which in turn is a liability enforceable against the city. Feil v. City of Coeur d'Alene, supra. However, it is our conclusion that the P.R.F. Act falls within the exception provided by art. VIII, § 3, for "ordinary and necessary expenses."

■■ "An expense is ordinary if in the ordinary course of municipal business, or the maintenance of municipal property, it may be and is likely to become necessary." Thomas v. Glindeman, 33 Idaho 394, 195 P. 92 (1921). One of the most fundamental and necessary expenses of municipal government is that which is incurred in the provision of adequate police protection for persons and property. Certainly it could not be argued in good faith that the weekly or monthly compensation of municipal employees is not an ordinary and necessary expense within the proviso of art. VIII, § 3. Yet, because some portion of a police officer's salary is temporarily withheld, subject to the reasonable contingency of continued employment, we are asked .to rule that it is not compensation. The better reasoned rule in most American jurisdictions today is that the rights of the employees in pension plans such as Idaho's Retirement Fund Act are vested, subject only to reasonable modification for the purpose of keeping the pension system flexible and maintaining its integrity. Bakenhus v. City of Seattle, 48 Wash.2d 695, 296 P.2d 536 (1956); Allen v. City of Long Beach, 45 Cal.2d 128, 287 P.2d 765 (1955); Abbott v. City of San Diego, 165 Cal.App.2d 511, 332 P.2d 324 (Cal. 4th DCA 1958). See 52 A. L.R.2d 437. Since the employees' rights are vested, the pension plan cannot be deemed to provide gratuities. Instead it must be considered compensatory in nature. This principle is aptly stated in Hickey v. Pitts-

burgh Pension Plan, 378 Pa. 300, 106 A.2d 233, 52 A.L.R.2d 430 (1954) as follows:

"Much of the misapprehension which apparently still exists in the minds of conscientious administrators of pension funds is possibly due to the fact that there still lingers a remnant of the ancient idea that a pension is a manifestation of sovereign generosity. The concept of pensions has come down through the centuries wearing a cloak of monarchical dispensation. Kings conferred pensions on court favorites, artists and military heroes with a flourish which proclaimed that the royal treasury was as inexhaustible as the crown's power was unlimited. However, despite ceremony and pronunciamento, the pensioner obtained no vested right to the proclaimed pension. In fact, he could not be any more assured of a continuation of the pension than he could be assured that his head would remain on his shoulders if he should displease his absolutist benefactor. But the pension of today is not a grant of the Republic nor in this case is it a gift of the City Fathers. It is the product of mutual promises between the pensioning authority and the pensioner; it is the result of contributions into a fund which exists for the single purpose of pensions." * * *

and the Pennsylvania court continued by quoting from prior Pennsylvania decisions:

"The basic theory which supports retirement statutes is that retirement pay is adjusted or delayed compensation for service rendered in the past. * * * [T]he basis on which these acts are founded is neither charitable nor benevolent; they are founded on faithful, valuable services actually rendered * * * over a long period of years". * * *

In O'Bryant v. City of Idaho Falls, 78 Idaho 313, 303 P.2d 672 (1956), this court said, "What cannot be done directly [pursuant to our constitution] cannot be accomplished indirectly." We now find the converse to be equally applicable. If the City of Idaho Falls has the constitutional authority to increase the pay of its police officers, it has the authority to postpone distribution of that increase until such time as the purpose for which it was conceived can be fulfilled. We find this conclusion to be harmonious not only with the language and intent of art. VIII § 3 but also with its objectives as stated in Williams v. City of Emmett, supra. In these times of social upheaval cities across this nation constantly feel the need for better trained, better equipped and better staffed police forces. It is not a simple task to entice capable personnel to accept a dangerous occupation where the rewards are so few and the hazards, even to personal dignity, are so great. We expect much from our law enforcement staffs; we should not lightly impair their expectations, or the expectations of their widows and children, for whatever additional compensation to which they are entitled under the P.R.F. Act.

We turn now to the arguments grounded in art. VIII § 4 and art. XII § 4. These sections provide:

"No county, city, town, township, board of education, or school district, or other subdivision, shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, association or corporation, for any amount or for any purpose whatever, or become responsible for any debt, contract or liability of any individual, association or corporation in or out of this state." Idaho Constitution Article VIII § 4.

"No county, town, city, or other municipal corporation, by vote of its citizens or otherwise, shall ever become a stockholder in any joint stock company, corporation or association whatever, or raise money for, or make donation or loan its credit to, or in aid of, any such company or association: provided, that cities and towns may contract indebtedness for school, water, sanitary and illuminating purposes: provided, that any city or town contracting such indebtedness shall own its just proportion of the property thus created and receive from any income

arising therefrom, its proportion to the whole amount so invested." Idaho Constitution Article XII § 4.

Whatever differences exist between these two sections, it is fundamental that their violation requires the imposition of some monetary liability upon a municipal corporation in favor of a non-public entity. Bannock County v. Citizens' Bank & Trust Co., 53 Idaho 159, 22 P.2d 674 (1933); Hansen v. Independent S. Dist. No. 1, 61 Idaho 109, 98 P.2d 959 (1939); Village of Moyie Springs, Idaho v. Aurora Mfg. Co., 82 Idaho 337, 353 P.2d 767 (1960). Appellants contend that the city has incurred a liability to a private association of some type. However, the statute clearly states:

"The *city council* * * * together with three (3) members of the police department, shall constitute the board of police retirement fund commissioners * * * [and] * * * shall provide for the disbursement of such retirement fund and shall designate the beneficiaries thereof * * *." (emphasis added) I. C. § 50–1504.

There is little doubt that this fund remains within effective control of the municipality, but to the extent that the commissioners have any degree of autonomy, they are disbursing public funds from a public trust for a public purpose; i. e., compensation of faithful public servants for services rendered over the years. The purpose of this Act is municipal and public in character and can readily be distinguished from those functions and purposes which are private in character and engaged in for private profit. Village of Moyie Springs, Idaho v. Aurora Mfg. Co., supra.

Summary judgment affirmed. Costs to respondent.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.