Justice EISMANN,
concurring in the result.
The issue in this case is whether the Centre Lease violates article VIII, section 3 of the Idaho Constitution. The Greater Boise Auditorium District (“District”) currently owns the Boise Centre, a meeting and event space in downtown Boise. KC Gardner Company, LLC, (“Developer”) is currently constructing a building (the “Centre Building”) adjacent to the Boise Centre and a building (the “Clearwater Building”) adjacent to the Centre Building. The District has contracted with Gardner to purchase the Centre Building and to lease space in the Clearwater Building with an option to purchase the leased space. The District has sufficient funds available to purchase the Centre Building, but it desires to finance that purchase in order to use its funds to purchase the facilities in the Clearwater Building, to construct a sky bridge connecting the Centre Building and the facilities in the Clearwater Building, and to make improvements to the Boise Centre.
In order to finance the purchase of the Boise Centre, the District entered into a transaction with the Capital City Development Corporation (the “Agency”). The Agency is not bound by the strictures of article VIII, section 3 because it lacks the power to levy and collect taxes and is not an alter ego of the City of Boise. Boise Redev. Agency v. Yick Kong Corp., 94 Idaho 876, 882-83, 499 P.2d 575, 581-82 (1972).
The District agreed to assign to the Agency the District’s right to purchase the Centre Building, and the Agency agreed to purchase the building from the Developer. Wells Fargo Bank, N.A., agreed to loan the Agency sufficient funds to purchase the building. The District and the Centre then entered into the Centre Lease under which the Agency would lease the Centre Building to the District and grant the District an option to purchase it. The Agency is contractually required to deposit the lease payments made by the District into an account from which the payments will be made on the promissory note given by the Agency to Wells Fargo for the purchase price of the building.
The Centre Lease does not obligate the District for a period exceeding one year. The lease term commences upon the closing date of the purchase of the property by the Agency and it ends on the following November 30. The District has the funds available to pay the initial term of the lease. The District then has the option, in its sole discretion, to renew the lease for one year. Under the lease, it may do so twenty-four consecutive times, with each renewal being for a one-year term. The District must take affirmative action to renew the lease each year. To renew the lease, the District must give notice of its intent to renew the lease for one year and budget an amount sufficient to make the rental payments for that year. Thus, under the terms of the lease the District is not contractually obligated to lease the property for a period exceeding one year. The applicable year is the District’s fiscal year. Theiss v. Hunter, 4 Idaho 788, 794, 45 P. 2, 3 (1896). To renew the lease for a one-year term, it must budget sufficient funds to make the lease payments during that year. Therefore, by entering into the Centre Lease the District will not “incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year.” Idaho Const, art. VIII, § 3.
If, in any year, the District fails to renew the lease according to its terms, the lease will terminate, and no provision of the lease will survive termination except certain provisions of Section 8.12 of the lease. That section requires the District “to presently budget and commit $350,000 to be held by the Dis *278 trict in a fund to be called the ‘Lease Contingency Fund.’ ”
With respect to $250,000 of the lease contingency fund, Section 8.12(a) of the Centre Lease provides:
$250,000 of the Lease Contingency Fund shall be held as the sole source of payment for reasonable attorneys’ fees, costs and expenses incurred by the Agency as a result of any claims for bodily injury or property damage, other than property insured, made against the Agency that arise from the negligent acts or omissions of the District, and to reimburse the Agency for the cost of any increased insurance premiums incurred by the Agency resulting solely from its acquisition of the Financed Project or issuance of the Note. The Agency and the District agree to seek and use insurance proceeds prior to use of the Lease Contingency Fund.
The lease provides that this $250,000 is the “sole source” of the payment of attorney fees, costs, and expenses incurred by the Agency as a result of any claims for bodily injury or property damage made against the Agency “that arise from the negligent acts or omissions of the District.” Article VIII, section 3, only applies to voluntarily incurring a debt or liability; it does not apply to liability created by negligent acts. Cruzen v. Boise City, 58 Idaho 406, 418-19, 74 P.2d 1037, 1042 (1937). Therefore, even if in some manner the District became liable to the Agency for an amount exceeding $250,000 due to the District’s negligence, there would be no violation of article VIII, section 3. This provision of the lease also provides that the $250,000 can be used for certain increased insurance premiums, but that contractual liability is limited to the amount in that contingency fund. Therefore, it does not cause the District to incur a debt or liability in an amount exceeding its annual income or revenue.
With respect to the remaining $100,000 of the lease contingency fund, Section 8:12(b) of the lease provides:
$100,000 of the Lease Contingency Fund shall be held as the sole source of payment for reasonable fees, costs, expenses, losses and liabilities of the Bank relating specifically to the Financed Project.
This creates a contractual liability to Wells Fargo, but the extent of the liability is limited to the $100,000 in the contingency fund. It does not incur a debt or liability exceeding the District’s annual income or revenue because the fund is already in existence. This obligation to Wells Fargo does not survive the termination of the lease.
The district court held that the Centre Lease violated article VIII, section 3 because it was not a true lease; it was a conditional sale contract. The district court is correct that the lease is a conditional sale contract. Once the promissory note has been paid in full through the lease payments, the District has an option to purchase the property by paying a nominal sum unrelated to the fair market value of the property.[10] During oral argument, the District admitted that the lease is a conditional sale contract. However, whether it is a lease or a conditional sale contract does not change the analysis under article VIII, section 3 of the Idaho Constitution. As this Court stated in Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475 (1931): “We doubt whether it makes any difference whether it may be appropriately denominated a lease or a conditional sales contract. The important matter is, does it create ‘any indebtedness or liability in any manner or for any purpose, exceeding in that *279 year the income and revenue provided for it for such year’?” Id. at 506, 6 P.2d at 477.
If the District was contractually obligated to make lease payments in the future, then all of those payments would be aggregated to determine whether the lease violated article VIII, section 3. Id. at 507, 6 P.2d at 477; Boise Dev. Co. v. Boise City, 26 Idaho 347, 363, 143 P. 531, 535 (1914). Under the terms of the Centre Lease, the District is not contractually bound to make any future lease payments. It only becomes contractually bound to make a lease payment in the future if it elects to extend the lease for one more year, and then it is only contractually bound to make a lease payment for that year. Therefore, the total payments that will be made if the District exercises its option each year to extend the lease are not aggregated to determine whether article VIII, section 3 is violated.
Mr. Frazier contends that because the Centre Lease is in reality a conditional sale agreement for the purchase of real property, this Court should adopt a different standard for judging its constitutionality under article VIII, section 3. He contends that otherwise it will permit municipalities to circumvent that constitutional provision. Drafting a contract that does not violate the constitutional provision is not circumventing it. It is simply seeking to comply with it.
Implicit in Mr. Frazier’s argument is that if the District renews the lease for a number of years, it will be compelled to continue doing so in order to protect its “equity” in the building. “ ‘The meaning of the constitution is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass upon it.’ ” Cohn v. Kingsley, 5 Idaho 416, 436, 49 P. 985, 992 (1897). “If it [the Constitution] is to be amended, the amendment should come from the people in the constitutional manner, and not by way of judicial construction.” Feil v. City of Coeur d’Alene, 23 Idaho 32, 58, 129 P. 643, 652 (1912). There is nothing in the wording of article VIII, section 3 that would permit a contract for the purchase of real estate to be treated differently from a contract to purchase goods or services. Likewise, there is nothing in the wording of the provision that applies to any compulsion to continue renewing a contract where there is no contractual obligation to do so.
In order for the constitutional provision to apply, the entity must “incur any indebtedness, or liability, in any manner.” Those words must be construed according to what they were understood to mean at the time the Constitution was ratified. Idaho Press Club, Inc. v. State Legislature, 142 Idaho 640, 642, 132 P.3d 397, 399 (2006). In Feil, this Court addressed the meaning of the word liability. Quoting from Bouvier’s Law Dictionary, this Court stated that liability means, “ ‘Responsibility; the state of one who is bound in law and justice to do something which may be enforced by action.’ ” 23 Idaho at 50, 129 P. at 649 (emphasis added). Quoting from Anderson’s Law Dictionary, this Court stated that liability means, “ ‘The state of being bound or obliged in law or justice to do, pay, or make good something; legal responsibility.’ ” Id. (emphasis added). It is clear that the word liability meant a legal responsibility that could be enforced in a court of law. The future lease payments that the District may in the future incur by electing to extend the lease term are not presently enforceable in a court of law. The word indebtedness was understood to have a narrower meaning that liability. Id. Bouvier’s Law Dictionary (rev. 6th ed. 1856), stated that “in order to create an indebtedness, there must be an actual liability at the time, either to pay then or at a future time.” http:// www.constitution.org/bouv/bouvier.htm (accessed Sept. 26, 2015). Anderson’s Law Dictionary (1889) defined debt as: “A liquidated demand. A sum of money due by certain and express agreement.” https://archive.org/ details/cu31924022836534 (accessed Sept. 26, 2015). Thus, a debt and a liability must be a legal obligation to pay a sum of money. The Centre Lease does not obligate the District to renew the lease in the future. The only legal obligation that the District will incur under the lease is to make the lease payment for the current lease term, which will not be greater than a one-year term.
Article VIII, section 3 does not prohibit incurring a debt or liability. It only prohibits doing so in an amount “exceeding in that *280 year, the income and revenue provided for it for such year.” Our Constitution does not prohibit incurring a debt or liability in anticipation of revenues “where the obligation or liability incurred anticipates the revenues already provided for that year, and where the revenues of the current year will meet and liquidate the obligation. Our Constitution specifically prohibits anticipating the income or revenue for more than the current year.” Feil, 28 Idaho at 45, 129 P. at 647. As long as the District will have income and revenue in the fiscal year to make the lease payment that will come due if it extends the lease for one more year, it will not violate the constitutional provision. There is no contention that the District would have insufficient income and revenue to make a one-year lease payment.
In holding that the Centre Lease violated article VIII, section 3, the district court stated: “If the District defaults on the lease, and the Agency has no ability to pay the debt, Wells Fargo will be allowed to pursue its remedies. As discussed above, the District does not establish that Wells Fargo will be barred from pursuing remedies against the District.” If the Agency is not able to pay the note it gave Wells Fargo, then the bank can foreclose its deed of trust. The district court did not identify what remedies the bank could possibly have against the District.
The district court also held that the Centre Lease violated article VIII, section 3 because, “While the promissory note will be between the Agency and Wells Fargo, the Court is not convinced there is no theory of law or set of facts under which Wells Fargo could not recover against the District.” The district court could not envision any such theory, other than that the Centre Lease could be construed to create an equitable mortgage. Based upon that possibility, the court stated, “If the lease is later construed as an actual or equitable mortgage, there is a corresponding liability.” Assuming that the Centre Lease could be construed as an equitable mortgage, the question is, “What corresponding liability”?
The Centre Lease provides that “nothing in this Lease shall be construed to require the District to renew the Lease or to exercise its Option to Purchase the Financed Project.” One of the four requirements for an equitable mortgage is that there is “a debt, definite in amount, due from the mortgagor to the mortgagee.” Suchan v. Suchan, 113 Idaho 102, 110, 741 P.2d 1289, 1297 (1986). The District would have to be the mortgagor. What debt would it owe to Wells Fargo? The most that it could owe would be a lease payment due for a one-year lease term. Under the terms of the lease, the District would have budgeted to make that payment.
For the above reasons, I would reverse the judgment of the district court.
Justice HORTON joins in this concurrence.

. Section 11.3 of the Centre Lease provides:
Option to Purchase Following Full Payment or Defeasance of the Note. Provided that the Note and any instrument issued to refund the Note shall have been paid in full or defeased in full, the District shall have the Option to Purchase the Financed Project. The District shall provide notice to the Agency of the exercise of its Option to Purchase under this Section 11.3 within sixty (60) days of full payment or defeasance of the Note. The closing of the Option to Purchase shall take place within thirty (30) days following such notice. The purchase price payable by the District shall be the sum of the following:
(a) An amount equal to any unpaid Agency's Fees and Expenses; and
(b) The sum of $10 for the Financed Project. If the District acquires sufficient funds to prepay the note, it could also exercise its option to purchase sooner.