# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47590

WAYNE HOFFMAN, an individual;
FREDERIC S. BIRNBAUM, an individual;
BRUCE C. BOYLES, an individual; G&G
VENTURES, LLC, an Idaho limited liability
company; ANDREA LANNING, an
individual; and BOB TIKKER, an individual,

    Plaintiffs-Appellants,

and

CLINT SIEGNER, BLUE VALLEY
TENANT ASSOCIATION, CHRISTINE
BROWN, RICK BROWN, HEATHER
CAMPBELL-ADAMS, KATHLEEN
GREENE, GARY HARDEY, BONITA
HARDEY, CHARLENE LANDIN, JUAN
LANDIN, and JOYCE MAGNUSON,

    Plaintiffs,

v.

CITY OF BOISE, IDAHO, a municipal
corporation and a political subdivision of the
State of Idaho,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2021 Term

Opinion Filed: March 23, 2021

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The judgment of the district court is affirmed.

Runft & Steele Law Offices, PLLC, Boise, for appellants. John Runft argued.

Jayme B. Sullivan, Boise City Attorney, Boise, for respondent. Scott Muir argued.

_____

BRODY, Justice.

1

This appeal involves "constitutional" taxpayer standing under article VIII, section 3 of the Idaho Constitution. Appellants are five individuals and one Idaho limited liability company (collectively, "Plaintiffs") who own real property in the City of Boise ("City") and pay ad valorem taxes to Ada County, Idaho. Plaintiffs brought an action in district court challenging ordinances the City passed that allocate tax increment financing ("TIF") revenues to Capital City Development Corporation ("CCDC"), the City's urban renewal agency. Specifically, the ordinances approve the allocation of TIF revenues for CCDC's use in the Shoreline District Urban Renewal Project Area ("Shoreline district") and Gateway East Economic Development District Project Area ("Gateway district"). Because Plaintiffs' alleged injuries are solely predicated upon their status as taxpayers, the district court dismissed their complaint for lack of standing.

On appeal to this Court, Plaintiffs allege they have standing under our decision in *Koch v. Canyon County*, 145 Idaho 158, 177 P.3d 372 (2008), in which we held that no particularized harm is necessary to establish taxpayer standing where a violation of article VIII, section 3 of the Idaho Constitution is alleged. Because we determine that, as a matter of law, the ordinances Plaintiffs challenge do not violate article VIII, section 3, we affirm the judgment of the district court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In late 2018, the City adopted two ordinances pursuant to section 50-2906 of the Idaho Local Economic Development Act ("LEDA"), authorizing the creation of the Shoreline and Gateway urban renewal districts. Ordinance 55-18 created the Shoreline district and incorporated the Shoreline District Urban Renewal Plan ("Shoreline plan") and related feasibility study. Ordinance 58-18 created the Gateway district and incorporated the Gateway East Urban Renewal Plan ("Gateway plan") and related feasibility study. Both ordinances became effective upon publication in the *Idaho Statesman* on December 20, 2018.

The feasibility study for the Shoreline plan estimated the cost of desired improvements to be approximately $66.5 million over 20 years, if fully implemented. The feasibility study for the Gateway plan estimated the cost of desired improvements to be approximately $96.5 million, if fully implemented. Plaintiffs allege that the total estimated project costs of each plan exceed the City's annual income and revenue in 2018.

2

The ordinances creating the Shoreline and Gateway districts both provide that TIF revenues will be allocated to CCDC to implement the respective urban renewal plans. TIF, which is also known as revenue allocation financing, is a method of funding urban renewal projects authorized by LEDA. I.C. § 50-2904. To implement TIF, a base assessment value for an urban renewal district is determined for the year in which a municipality passes an ordinance approving an urban renewal plan. I.C. §§ 50-2903, 50-2908. If, during the term of the plan, the actual assessed value of property within the district increases above the base assessment value, tax revenues attributable to this increase (the so-called "tax increment") are collected by the county assessor, but not distributed to the municipality. I.C. § 50-2908. Rather, TIF revenues are distributed to an urban renewal agency, such as CCDC, which directly reinvests the revenues in the district or issues bonds to fund renewal projects that the agency will repay with TIF revenues. *See id.*

Section 10 of each challenged ordinance provides that "[s]o long as any [CCDC] bonds, notes or other obligations are outstanding, the City Council will not modify the [respective urban renewal plan] in a manner that would result in a reset of the base assessment value to current value in the year modification occurs." In simpler terms, as long as CCDC has outstanding debts related to the Shoreline or Gateway plans, the City will not stop or reduce the TIF revenues flowing to CCDC.

Plaintiffs filed a complaint in district court in January 2019, seeking an injunction prohibiting the City from proceeding under the ordinances, as well as a declaratory judgment that the TIF provisions of the Shoreline and Gateway plans violate article VIII, section 3 of the Idaho Constitution. Shortly thereafter, and before the City filed a responsive pleading or motion to dismiss, Plaintiffs filed an amended complaint, which added one paragraph of factual allegations and purported to join several additional plaintiffs. Plaintiffs filed a second amended complaint two weeks later. The second amended complaint is not in the record, but apparently varied from the first amended complaint only in that it sought to join several more plaintiffs. The district court struck the second amended complaint and dismissed the plaintiffs that the first amended complaint had sought to join, leaving only the six original plaintiffs as parties to the action. Neither of these decisions are at issue here.

In April 2019, the City filed a motion to dismiss, arguing that under *Thomson v. City of Lewiston*, 137 Idaho 473, 50 P.3d 488 (2002), Plaintiffs lacked standing because they alleged

injury due to their status as taxpayers without demonstrating any particularized harm. In response, Plaintiffs argued they had standing under *Koch v. Canyon County*, 145 Idaho 158, 177 P.3d 372 (2008). As already noted, we held in *Koch* that no particularized injury is necessary to confer standing where a taxpayer alleges a municipality has violated article VIII, section 3 by incurring certain indebtedness or liabilities. 145 Idaho at 162, 177 P.3d at 376. Plaintiffs argued that the ordinances approving the Shoreline and Gateway plans created such a liability.

The district court granted the City's motion to dismiss because it found standing under *Koch* was not available to Plaintiffs. Specifically, the district court ruled that Plaintiffs had not presented a viable theory of "constitutional" taxpayer standing because this Court held in *Urban Renewal Agency of City of Rexburg v. Hart,* 148 Idaho 299, 303, 222 P.3d 467, 471 (2009), that article VIII, section 3 does not apply to the liabilities of urban renewal agencies. Plaintiffs filed a motion to amend or alter the judgment, which the district court denied. Plaintiffs timely appealed to this Court.

## II.     STANDARD OF REVIEW

"When determining the constitutionality of a city ordinance, the Court will review the ordinance de novo. A party challenging an ordinance on constitutional grounds bears the burden of establishing the ordinance's unconstitutionality and is required to 'overcome a strong presumption of validity.' " *State v. Doe*, 148 Idaho 919, 924, 231 P.3d 1016, 1021 (2010) (quoting *State v. Korsen*, 138 Idaho 706, 711, 69 P.3d 126, 131 (2003)) (citations omitted).

## III.     ANALYSIS

Article VIII, section 3 of the Idaho Constitution provides that municipalities may not incur certain debts or liabilities without the approval of a supermajority of voters in a special election:

> No county, city, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose[.]

Here, the City adopted Ordinances 55-18 and 58-18 without submitting them to voters for approval. Thus, if the ordinances have created an indebtedness or liability within the meaning of article VIII, section 3, Plaintiffs may be able to establish constitutional taxpayer standing under

*Koch*. If not, Plaintiffs cannot establish constitutional taxpayer standing and the district court did not err in dismissing their complaint.

As an initial matter, Plaintiffs argue—and we agree—that the district court erred in relying on *Hart*. In determining that *Hart* applied, the district court wrote that "revenue allocation bonds do not violate section 3 of article VIII." That said, revenue allocation bonds (i.e., bonds issued by CCDC which it intends to repay with TIF revenues) have never been at issue in this case. Rather, Plaintiffs have focused solely on the constitutionality of the ordinances creating the Shoreline and Gateway districts. However, on de novo review, we affirm the dismissal of Plaintiffs' complaint because Ordinances 55-18 and 58-18, which were adopted pursuant to provisions of LEDA, do not violate article VIII, section 3 of the Idaho Constitution.

### A. The ordinances Plaintiffs challenge are not unconstitutional because an allocation of TIF revenues to an urban renewal agency is not a "liability" under article VIII, section 3 of the Idaho Constitution.

Plaintiffs argue that by adopting Ordinances 55-18 and 58-18 the City committed TIF revenues to CCDC for twenty years and, if the City were to stop the flow of TIF revenues to CCDC, CCDC "would be entitled to bring a cause of action against the City for breach of contract." Therefore, Plaintiffs maintain that the City has incurred a de facto liability subject to constitutional restrictions. Plaintiffs cite no authority for the proposition that an ordinance may give rise to liability in contract. However, since section 10 of each ordinance provides that the City will not reduce or stop the flow of TIF revenues to CCDC "[s]o long as any [CCDC] bonds, notes or other obligations are outstanding," we assume, without deciding, that some cognizable obligation exists as long as the ordinances remain in effect, whatever its precise character. However, even with this assumption, we hold that the challenged ordinances do not violate the Idaho Constitution because TIF revenues cannot create the type of "liability" with which article VIII, section 3 is concerned.

Article VIII, section 3 "is primarily designed to protect taxpayers and citizens of political subdivisions. . . . who would bear the consequences of the subdivision incurring excessive indebtedness." *Koch*, 145 Idaho at 162, 177 P.3d at 376. The section achieves this goal by requiring (absent one of several exceptions not at issue here) that local governments operate on a pay-as-you-go basis, unless voters approve otherwise:

> The Idaho Constitution is imbued with the spirit of economy, and in so far as possible it imposes upon the political subdivisions of the state a pay-as-you-go

5

> system of finance. The rule is that, without the express assent of the qualified
> electors, municipal officers are not to incur debts for which they have not the
> funds to pay. Such policy entails a measure of crudity and inefficiency in local
> government, but doubtless the men who drafted the Constitution, having in mind
> disastrous examples of optimism and extravagance on the part of public officials,
> thought best to sacrifice a measure of efficiency for a degree of safety.

*Williams v. City of Emmett*, 51 Idaho 500, 505, 6 P.2d 475, 576 (1931) (quoting *Dexter Horton Tr. & Sav. Bank v. Clearwater Cnty.*, 235 F. 743 (D. Idaho 1916)).

We have unwaveringly adhered to the pay-as-you-go ethos of article VIII, section 3 for more than one hundred years, *see e.g.*, *City of Idaho Falls v. Fuhriman*, 149 Idaho 574, 579–80, 237 P.3d 1200, 1205–06 (2010); *City of Boise v. Frazier*, 143 Idaho 1, 3–5, 137 P.3d 388, 390–92 (2006); *City of Pocatello v. Peterson*, 93 Idaho 774, 782, 473 P.2d 644, 652 (1970); *Hanson v. City of Idaho Falls*, 92 Idaho 512, 514, 446 P.2d 634, 636 (1968); *Williams*, 51 Idaho at 505, 6 P.2d at 476; *Boise Development Co. v. City of Boise*, 26 Idaho 347, 366, 143 P. 531, 537 (1914); *Feil v. Coeur d'Alene*, 23 Idaho 32, 49–50, 129 P. 643, 648–49 (1912), and we reaffirm that principle today.

Here, Plaintiffs have challenged ordinances allocating TIF revenues to CCDC that the City adopted in accordance with the provisions of LEDA. Pursuant to LEDA, the ordinances do not entitle CCDC to any TIF revenues unless (1) the combined property values for the year are assessed within the renewal districts, (2) the levy rate for the year is applied to this value, and (3) the revenue collected by the levy exceeds the revenue which would have been collected by a levy on the base assessment value. I.C. § 50-2908. In other words, it is impossible for the City, Ada County, or any other governmental subdivision to be liable to provide TIF revenues unless TIF revenues have been generated and the cash is on hand to distribute. Because this is consonant with the word and spirit of article VIII, section 3, we hold that the ordinances challenged by Plaintiffs are constitutional. *Cf. Feil*, 23 Idaho at 45, 129 P. at 647 (observing there is no violation of the constitution "where the obligation or liability incurred anticipates the revenues already provided for for that year, and where the revenues of the current year will meet and liquidate the obligation.").

Despite the self-funding nature of TIF, Plaintiffs argue that the City has nevertheless incurred an unconstitutional liability for two reasons: (1) if "future tax proceeds are capped at a certain level because of TIF allocations," the City "will likely be faced with the need to raise taxes to cover the effects of inflation and other costs that will inevitably arise"; and (2) the

6

aggregate amount of TIF revenues allocated to CCDC under the twenty-year plans allegedly exceeds the City's annual budget in 2018, the year the ordinances were adopted. Neither of these arguments is persuasive.

Plaintiffs offer no support for their assertion that the provision of TIF revenues for the Shoreline and Gateway plans will "inevitably" impact the City budget and lead to higher taxes. Rather, the argument appears to be an invitation to speculate about the independent decision-making of City leaders in setting future budgets. Further, the effect that Plaintiffs predict from the ordinances is hardly a foregone conclusion. According to the Shoreline and Gateway plans, the combined assessed value of taxable property within the two districts accounts for well under two percent of the taxable property within the City. While it is possible that forgoing a portion of revenues that might be generated by this fraction of the tax base could require the City to raise taxes in the future, that is far from a certainty. In any event, simply because a decision may affect the City's budget in the future does not mean it is a liability that must be submitted to voters for approval under the Idaho Constitution. To adopt such an interpretation of article VIII, section 3 would radically expand the scope of the section to apply to nearly any action by a government subdivision. Taken to its extreme, even a decision *not* to increase taxes in a given year would create a "liability" under Plaintiffs' argument because that could require higher taxes to meet needs in later years.

Turning to Plaintiffs' second argument, Plaintiffs maintain that our cases require the total amount of TIF revenues provided under the twenty-year duration of the plans to be aggregated into a "present liability" and compared to the City's annual income and revenue in the year the ordinances were adopted. Because Plaintiffs allege the City has obligated itself to pay $66.5 million and $96.5 million under the Shoreline and Gateway plans respectively, and that the obligation under each plan "substantially exceed[s] the City's annual income and revenue" in 2018, they argue the ordinances have created a liability within the meaning of article VIII, section 3. This argument is based on a misunderstanding of the relevant facts and law.

First, the facts: Plaintiffs allege that the City has obligated itself to pay $66.5 million and $96.5 million toward the Shoreline and Gateway plans respectively, but this is not true. These figures are not amounts pledged by the City, but estimates of "desired project costs" from the feasibility studies for the plans—i.e., the amount that CCDC anticipates will be invested *if* funding is available to complete all facets of the Shoreline and Gateway plans *as projected*.

7

However, as already noted, CCDC will only receive the TIF revenues actually generated within the districts. In fact, though it seems unlikely, CCDC could receive no revenues at all if property values in the districts fail to increase above the base assessment value. Thus, the actual amount to be aggregated is uncertain, at best.

Moreover, even if Plaintiffs could prove an aggregate amount of TIF revenues that CCDC will receive, no decision of this Court suggests that the proper analysis under article VIII, section 3 involves the comparison of TIF revenue allocations over many years with the City's budget in a single year. Plaintiffs' aggregation argument apparently derives from dicta in *Greater Boise Auditorium District v. Frazier*, 159 Idaho 266, 360 P.3d 275 (2015), in which we considered the distinction between "indebtedness" and "liability." While many other state constitutions place limits on municipal obligations, most only address indebtedness. *Id.* at 271, 360 P.3d at 280. However, our constitution speaks of both indebtedness and liability, and we noted this is significant because liability is a much broader concept than indebtedness:

> [P]resently obligating oneself to future payments is not a present indebtedness, but it is a present liability:
>
>> If A by a valid contract employs B to work for him for the term of one year at $50 per month, payable at the end of each and every month, would this contract not be a liability on A[] as soon as executed? A debt of $50 would accrue thereon at the end of each month, but the liability would be incurred at the time the contract was entered into.
>
> Accordingly, governmental subdivisions are liable for the aggregate payments due over the total term of a contract rather than merely for what is due the year in which the contract was entered.

*Frazier*, 159 Idaho at 272, 360 P.3d at 281 (quoting *Boise Development Co.*, 26 Idaho at 363, 143 P. at 535) (internal citations omitted). To illustrate this principle further, we discussed two older cases in which this Court invalidated multiyear contracts entered into by cities without voter approval. *Id.* (discussing *Boise Development Co.*, 26 Idaho 347, 143 P. 531 and *Williams v. City of Emmett*, 51 Idaho 500, 6 P.2d 475 (1931)). But as *Frazier* makes clear, we did not invalidate these contracts because the cities' aggregate obligations exceeded their single-year budgets. Rather, the contracts were unconstitutional because "[w]hile the municipal corporation may have been able to pay the obligations due in the year in which it entered the contract, there was nothing guaranteeing it could continue to make the payments to which it was obligated in future years." *Id.* Thus, the present case is plainly distinguishable. If any TIF revenues are due to

8

CCDC pursuant to the challenged ordinances, the nature of TIF ensures that funds will be available to meet that obligation.

Indeed, though Plaintiffs cite *Frazier* in support of their aggregation argument, we did *not* apply the aggregation principle in that case; to the contrary, we upheld an agreement where the aggregate expenditure contemplated by a governmental subdivision exceeded its annual budget. In *Frazier*, the Greater Boise Auditorium District ("GBAD") sought to purchase a building. 159 Idaho at 267–69, 360 P.3d at 276–78. GBAD was a governmental entity subject to article VIII, section 3 and the cost of the building and related projects exceeded GBAD's annual revenue. *Id*. Thus, to finance the purchase, GBAD partnered with CCDC, which, as we held in *Hart*, is not bound by the restrictions of article VIII, section 3. *Id.* Under the agreement, CCDC planned to take out a loan from a bank to purchase the building, then lease the building to GBAD and use the lease payments to repay the loan. *Id*. The lease was to be for a one-year term, renewable at GBAD's option for twenty-four consecutive one-year terms. *Id*. Further, GBAD was required to budget sufficient funds to make lease payments for the following year before it could renew the lease. *Id*. Once the loan from the bank was fully repaid, the agreement between GBAD and CCDC provided that GBAD would have the option to purchase the building for a nominal sum. *Id*. If GBAD defaulted on the lease, or otherwise incurred liability to CCDC in connection with the agreement, the agreement limited CCDC's remedies to one-year's lease payments and certain costs to be paid from a "lease contingency fund." *Id*.

The plaintiff in *Frazier* argued that this arrangement was a "conditional sale" and that municipalities would be able to "circumvent article VIII, § 3 at will" if we approved the structure of the agreement. *Id.* at 275, 360 P.3d at 284. We disagreed. Regardless of how the agreement was characterized, we held that it did not violate the Idaho Constitution because GBAD was never required to renew the lease for additional terms. Further, if GBAD were to incur liability for breach of the agreement during a term, it would be able to meet that liability with revenues on hand in the year the liability was incurred. *Id.* at 273, 360 P.3d at 282. Therefore, *Frazier* demonstrates that the ability to cover potential taxpayer liability within a particular year is the determinative consideration, not whether the cost of a project over many years exceeds a government subdivision's budget in any single year.

Returning to this case, we have already noted that no TIF revenues will be due to CCDC under Ordinances 55-18 and 58-18 unless TIF revenues are actually generated in the Shoreline

and Gateway districts. Thus, much as in *Frazier*, the total sum CCDC may eventually receive for use in the Shoreline and Gateway districts, and how this figure compares to the City's budget in 2018, is irrelevant. Plaintiffs have failed to demonstrate that the ordinances create any "liability" within the meaning of article VIII, section 3 of the Idaho Constitution. Therefore, Plaintiffs cannot establish standing under *Koch* and we affirm the district court's dismissal of Plaintiffs' complaint.

**B. The City is not entitled to attorney fees on appeal.**

The City argues it is entitled to attorney fees on appeal under Idaho Code section 12-117 and Idaho Code section 12-121. Idaho Code section 12-117(1) provides that in any proceeding between a political subdivision and a person "the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law." Idaho Code section 12-121 provides that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation."

The City's only argument in support of fees is that Plaintiffs brought this appeal "in disregard to established Idaho case law," namely our precedents regarding traditional taxpayer standing and *Hart*. However, Plaintiffs have never asserted traditional taxpayer standing, and, contrary to the district court's decision, *Hart* has no bearing on the Plaintiffs' arguments. Accordingly, we decline to award fees on appeal.

## IV. CONCLUSION

For the reasons above, the decision of the district court dismissing Plaintiffs' complaint is affirmed. We award costs to the City as the prevailing party on appeal.

Chief Justice BEVAN, and Justices BURDICK, STEGNER, and MOELLER CONCUR.

10